**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JO D. MOLINARY, Trustee of the
Susan Pruitt Cloud Land Trust,
<u>Plaintiff-Appellee,</u>

v.

POWELL MOUNTAIN COAL COMPANY,

INCORPORATED, d/b/a Wax Coal
Company,
<u>Defendant-Appellant.</u>

No. 96-1728

NATIONAL MINING ASSOCIATION;
UNITED STATES OF AMERICA,
<u>Amici Curiae.</u>

JO D. MOLINARY, Trustee of the
Susan Pruitt Cloud Land Trust,
<u>Plaintiff-Appellant,</u>

v.

POWELL MOUNTAIN COAL COMPANY,

INCORPORATED, d/b/a Wax Coal
Company,
<u>Defendant-Appellee.</u>

No. 96-1797

NATIONAL MINING ASSOCIATION;
UNITED STATES OF AMERICA,
<u>Amici Curiae.</u>

Appeals from the United States District Court

for the Western District of Virginia, at Big Stone Gap.

Samuel G. Wilson, Chief District Judge.

(CA-91-7-B)

Argued: June 3, 1997

Decided: September 11, 1997

Before WILKINS, NIEMEYER, and HAMILTON,
Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Hamilton wrote the opinion, in which Judge Wilkins and Judge
Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Stephen McQuiston Hodges, PENN, STUART &
ESKRIDGE, Abingdon, Virginia, for Appellant. Ethan Gregory
Shenkman, Environment and Natural Resources Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Amicus Curiae United States. Walton Davis Morris, Jr., Charlottes-
ville, Virginia, for Appellee. **ON BRIEF:** Timothy W. Gresham,
PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellant.
Daniel R. Bieger, COPELAND, MOLINARY & BIEGER, Abingdon,
Virginia, for Appellee. Lois J. Schiffer, Assistant Attorney General,
John T. Stahr, Environment and Natural Resources Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Amicus Curiae United States. Harold P. Quinn, Jr.,
NATIONAL MINING ASSOCIATION, Washington, D.C., for
Amicus Curiae National Mining.

_____

**OPINION**

HAMILTON, Circuit Judge:

In this appeal, we consider whether § 520(f) of the Surface Mining
Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C.
§ 1270(f), provides a federal cause of action for the recovery of dam-

2

ages resulting from violation of state regulations that are a part of the state's surface coal mining and reclamation regulatory program approved by the United States Secretary of the Interior pursuant to § 503 of SMCRA, 30 U.S.C. § 1253. We hold that it does.

I.

In this suit, Jo D. Molinary represents a class of persons, known as the "Pruitt heirs" (Pruitt Heirs), who own more than a 99% undivided interest in the surface estate of a fifty-acre tract of land located in Lee County, Virginia (the Pruitt Tract). The Powell Mountain Coal Company (Powell Mountain) owns an approximate .14% undivided interest in the surface estate of the Pruitt Tract and, under an 1887 deed, owns a 100% interest in the mineral rights of the Pruitt Tract. The Pruitt Tract is rural, mountainous, and has little economic value apart from its timber and mineral rights. The Pruitt Heirs use it primarily for recreational purposes such as hunting and hiking. Prior to Congress' enactment of SMCRA in 1977, a three-acre portion of the Pruitt Tract was strip mined for coal by parties unrelated to Powell Mountain (the Three Acre Tract). The strip mining left a bench and a high wall on the Three Acre Tract that had not been reclaimed except by nature.

In February 1990, Powell Mountain submitted a permit application to the Division of Mined Land Reclamation for the Commonwealth of Virginia (the DMLR), seeking permission to auger mine[1] the Three Acre Tract for coal that still remained. In its permit application, Powell Mountain listed itself and the "Pruitt Heirs" as cosurface owners, but did not list each heir by name. Powell Mountain listed itself as the sole owner of the mineral rights. Powell Mountain also informed the DMLR orally that it had obtained a legal opinion that no lease to extract the coal by the auger mining method was required from the other owners of the surface estate. Without further submissions from Powell Mountain, the DMLR issued the permit. Powell Mountain then extracted 4423.51 tons of coal from the Three Acre Tract by the auger mining method. Powell Mountain sold the coal for $190,122.46, clearing $35,909.05 in net income.

_____

[1] Auger mining is a method of surface mining whereby a large mechanical screw penetrates a coal seam and turns to extract the coal.

3

After receiving complaints about the permit's issuance, the DMLR determined that Powell Mountain's permit application did not comply with certain state permitting regulations. Specifically, the DMLR determined that the permit application: (1) failed to list the name and address of all record owners as required by Virginia Regulation § 480-03-19.778.13(e) and (2) failed to contain either (a) written consent of the surface owners to extract the coal by surface mining, (b) a copy of a conveyance that expressly granted it the right to extract coal by surface mining, or (c) documentation that under applicable state law, it had the legal authority to extract the coal by surface mining as required by Virginia Regulation § 480-03-19.778.15(b). As a result, the DMLR revoked Powell Mountain's permit, issued a cessation order, and ordered Powell Mountain to reclaim the Three Acre Tract.

Subsequently, this class action was filed in the United States District Court for the Western District of Virginia under SMCRA's citizen suit provision, § 520(f) of SMCRA. See 30 U.S.C. § 1270(f). Section 520(f) of SMCRA provides that "[a]ny person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to [SMCRA] may bring an action for damages (including reasonable attorney and expert witness fees) . . . ." Id. Relevant to the issues before us, the Pruitt Heirs alleged that Powell Mountain's failure to comply with Virginia Regulations §§ 480-03-19.778.13(e) and 480-03-19.778.15(b) proximately caused the improper issuance of the permit, which in turn resulted in the auger mining of the Three Acre Tract without their consent.[2] The parties later stipulated the total value of the surface mining rights used by Powell Mountain to be $3,317.

Powell Mountain moved to dismiss the complaint for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). In its motion to dismiss, Powell Mountain argued that federal courts lack subject matter jurisdiction over citizen suits in states whose regulatory and

_____

[2] Initially, the Pruitt Heirs also sought recovery for physical damage to the Three Acre Tract that allegedly resulted from Powell Mountain's failure to properly reclaim it. The Pruitt Heirs later abandoned their reclamation claims in favor of pursuing them through federal administrative proceedings.

4

enforcement programs have been approved by the Secretary of the Interior (the Secretary) pursuant to § 503 of SMCRA. Rejecting this argument as inconsistent with the plain language of§ 520(f) of SMCRA, the district court denied the motion. See Molinary v. Powell Mountain Coal Co., Inc., 779 F. Supp. 839 (W.D. Va. 1991).

The Pruitt Heirs filed a motion for summary judgment as to liability. See Fed. R. Civ. P. 56. Powell Mountain filed a cross motion for summary judgment, arguing in part that proximate cause was lacking. The district court rejected this argument and granted summary judgment in favor of the Pruitt Heirs as to liability under § 520(f) of SMCRA. The district court then conducted a jury trial on the sole issue of whether Powell Mountain's regulatory violations were wilful, reckless or grossly negligent. The jury, presented with a single interrogatory to this effect, answered in the affirmative.

The parties agreed to submit the issues of damages, attorney's fees and costs to the district court for determination. Subsequently, the district court awarded the Pruitt Heirs $190,622.46 in compensatory damages, an amount equal to the gross sales price of the coal. The district court recognized that technically the Pruitt Heirs only suffered a nominal sum of damages, but reasoned that awarding the much larger sum was necessary to "discourage the kind of intentional conduct that occurred in the present case . . . ." (J.A. 300). The district court also awarded the Pruitt Heirs $91,644.92 in costs and attorney's fees. Thus, the district court entered final judgment in favor of the Pruitt Heirs for $282,267.38.

Powell Mountain noted a timely appeal. On appeal, Powell Mountain challenges: (1) the district court's denial of its motion to dismiss for lack of subject matter jurisdiction; (2) the district court's entry of summary judgment as to liability in favor of the Pruitt Heirs; (3) the district court's denial of its motion for summary judgment; and (4) the district court's award of compensatory damages as excessive. The Pruitt Heirs noted a timely cross appeal, in which they challenge the district court's award of attorney's fees as inadequate.

II.

Before we address Powell Mountain's challenge to the district court's denial of its motion to dismiss for lack of subject matter juris-

5

diction, we briefly set forth some background information about SMCRA and Virginia's federally approved version of SMCRA. Congress enacted SMCRA in 1977 to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). Section 201 of SMCRA, 30 U.S.C. § 1211, "creates the Office of Surface Mining Reclamation and Enforcement (OSM), within the Department of the Interior, and the Secretary of the Interior (Secretary) acting through OSM, is charged with primary responsibility for administering and implementing [SMCRA] by promulgating regulations and enforcing its provisions." Hodel v. Virginia Surface Min. & Reclam. Ass'n, 452 U.S. 264, 268-69 (1981). See also 30 U.S.C.§§ 1211, 1224.

To achieve its goals, SMCRA relies on "a program of cooperative federalism that allows States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." Hodel at 289. Any state "wish[ing] to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations" on non-federal lands within its borders must submit a proposed program to the Secretary for approval. 30 U.S.C. § 1253(a). A state program must include a permitting system that incorporates SMCRA's environmental protection standards and is in accordance with SMCRA's enforcement and procedural requirements. See id. If a state covered by SMCRA fails to propose or implement a satisfactory program, SMCRA requires the Secretary to promulgate and implement a federal regulatory program for that state. See 30 U.S.C. § 1254.

In 1979, Virginia enacted the Virginia Surface Mining Control and Reclamation Act of 1979 (VSMCRA) in part to authorize and enable Virginia to submit, and obtain approval of, a permanent state surface coal mining regulatory program and abandoned mine reclamation program pursuant to SMCRA. See Va. Code Ann.§ 45.1-228. On December 15, 1981, the Secretary approved this program. See 30 C.F.R. § 946.10. Thus, since that date, Virginia has had "exclusive jurisdiction over the regulation" of surface coal mining and reclamation within its borders. See 30 U.S.C. § 1253(a).**3**

_____

**3** Virginia is one of twenty-four so-called "primacy" states that operate their own programs. Federally implemented programs operate in twelve other "non-primacy" states.

VSMCRA and its regulations require a coal mining company to obtain a permit before it conducts surface mining operations on a given tract of land within Virginia. See Va. Code Ann. § 45.1-234; Va. Regs. Reg. § 480-03-19.773.11(a). The information required in a permit application is determined by VSMCRA and its accompanying regulations. See Va. Code Ann. §§ 45.1-235 to 236 and 45.1-242; Va. Regs. Reg. § 480-03-19.72 et seq. VSMCRA's citizen suit provision provides that "[a]ny person who as a result of the violation by any operator of any rule, regulation, order, or permit issued pursuant to [VSMCRA], suffers injury to his person or property may bring an action for damages, including reasonable attorney and expert witness fees. Such action may be brought only in the circuit court of the county or city in which the surface coal mining operation complained of is located." Va. Code Ann. § 45.1-246.1.G.

III.

Powell Mountain's theory that jurisdiction is exclusive in the courts of Virginia constitutes a facial attack on the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the complaint for lack of subject matter jurisdiction. To the extent that Powell Mountain argues that the activity complained of is not cognizable under § 502(f) of SMCRA, the motion may be treated alternatively as one to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). See Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 495-96 (3d Cir. 1987). Either way, we review de novo the district court's legal conclusions surrounding the denial of the motion.

Title 28, U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This statutory section is a general federal question statute, which gives district courts original jurisdiction over federally created causes of action unless a specific statute assigns jurisdiction elsewhere. Int'l Science & Tech. Inst., Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1154 (4th Cir. 1997).

As previously stated, the Pruitt Heirs brought this action in the United States District Court for the Western District of Virginia pur-

suant to SMCRA's citizen suit provision, § 520(f) of SMCRA. Section 520(f) of SMCRA provides:

> Any person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to [SMCRA] may bring an action for damages (including reasonable attorney and expert witness fees) only in the judicial district in which the surface coal mining operation complained of is located. Nothing in this subsection shall affect the rights established by or limits imposed under State Workmen's Compensation laws.

30 U.S.C. § 1270(f). This provision creates a federal cause of action for the recovery of damages resulting from the violation of "any rule, regulation, order, or permit issued pursuant to[SMCRA]." Id. The dispute here centers on whether the statutory phrase"issued pursuant to [SMCRA]," includes state-promulgated regulations that comprise a federally approved state surface mining and reclamation program. More precisely for purposes of this case, the issue is whether the Virginia regulations allegedly violated by Powell Mountain were issued "pursuant to" SMCRA, such that the district court had subject matter jurisdiction over the complaint under § 520(f). Powell Mountain contends that the Virginia regulations were not issued pursuant to SMCRA, while the Pruitt Heirs contend that they were. The Secretary, who has submitted an amicus brief in this case, espouses the same interpretation as the Pruitt Heirs.

Congress has not directly spoken on this precise issue through a provision in SMCRA or its legislative history. Because Congress has not "directly spoken to the precise question at issue," we must sustain the Secretary's interpretation so long as it is"based on a permissible construction of the statute." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).**4** In determining

---

**4** We find no reason to suspect that the Secretary's "interpretation does not reflect the agency's fair and considered judgment on the matter in question." See Auer v. Robbins, 117 S. Ct. 905, 912 (1997). Thus, the fact that the Secretary's interpretation of the statutory language at issue comes to us in the form of a legal brief "does not, in the circumstances of this case, make it unworthy of deference." Id.

whether an agency's interpretation is a permissible construction of the statute, we need not "conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. at 843 n.11. Instead, we should "accord considerable deference to the agency's interpretation of the statute, and `we should not disturb [that interpretation] unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.'" Akindemowo v. INS, 61 F.3d 282, 284 (4th Cir. 1995) (quoting Chevron, 467 U.S. at 845). For the following reasons, we conclude that the interpretation espoused by the Secretary is a permissible construction of § 520(f) of SMCRA.

First, the language at issue is certainly broad enough to support the Secretary's interpretation. It may reasonably be said that once the Secretary approves a state surface coal mining and reclamation program, the rules, regulations, orders, and permits issued under that program are "issued," in the language of § 520(f), "pursuant to" SMCRA.

Second, creating a federal cause of action so that citizens may redress violations of state surface coal mining and reclamation regulations in federal court is consistent with Congress' goal of establishing "a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a).

Third, as the Secretary points out in its amicus brief, when Congress referred to permits issued by either state or federal regulatory authorities elsewhere in SMCRA, it used the phrase,"permit issued pursuant to this chapter." See, e.g., 30 U.S.C. §§ 1256(d)(1), 1261(b), 1272(a)(6). By contrast, when Congress intended to limit the application of a provision to permits or orders issued pursuant to a federal program, it did so expressly. See, e.g., 30 U.S.C. §§ 1268(e)-(f) ("permit issued pursuant to a Federal program"); 1273(b) ("permit . . . issued by the Secretary"); 1275(a)(1) & (c) ("notice or order" issued "pursuant to Federal Program").

Fourth and finally, as the Secretary also points out, its interpretation is consistent with the operation of § 520(a)(1) of SMCRA, which

9

provides for citizen suits to ensure compliance with the "provisions of [SMCRA] or of any rule, regulation, order or permit issued pursuant thereto," 30 U.S.C. § 1270(a)(1), in conjunction with the operation of § 520(b) of SMCRA, which places limits on the initiation of such suits. Section § 520(b)(1)(B) of SMCRA states that a suit may not be commenced under § 520(a)(1) if "the Secretary or the State" is already "diligently prosecuting a civil action . . . to require compliance." 30 U.S.C. § 1270(b)(1)(B). Because a state would only prosecute a compliance action if it were a primacy state, the language of these subsections shows that Congress contemplated that federal citizen suits for compliance would be brought in primacy states. Considering that the key language in § 520(a)(1) of SMCRA is virtually identical to the key language in § 520(f) of SMCRA, it follows that Congress intended § 520(f) of SMCRA to provide for federal citizen suits for damages in primacy states.

The Secretary's interpretation does not conflict, as Powell Mountain suggests, with the federal grant of "exclusive regulatory jurisdiction over the regulation of surface coal mining and reclamation operations" in § 520(f) of SMCRA to states with federally approved surface coal mining and reclamation programs. See 30 U.S.C. § 1253(a). Exclusive regulatory jurisdiction simply does not encompass exclusive adjudicatory jurisdiction. Common sense dictates that a government's acts in regulating a subject are distinctly different than its acts in adjudicating a party's rights related to the subject.**5**

Because Congress has not specifically assigned jurisdiction over

---

**5** In Haydo v. Amerikohl Mining, Inc., 830 F.2d 494 (3d Cir. 1987), the Third Circuit refused to make this distinction. In that case, the court concluded that reading the language of § 503(a) of SMCRA in conjunction with § 520(f) of SMCRA compelled the conclusion that a state regulation connected to a federally approved regulatory program was not "issued pursuant to [SMCRA]," in the language of § 520(f) of SMCRA. Id. at 497. As the district court in the present case correctly recognized, the holding in Haydo ignores the fact that the word "exclusive" in § 503(a) modifies the phrase "regulatory jurisdiction," and nothing more. The Third Circuit is the only federal appellate court that has addressed the scope of the phrase "issued pursuant to [SMCRA]," as found in § 520(f) of SMCRA.

10

§ 520(f) suits elsewhere, we conclude the district court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Int'l Science & Tech. Inst., Inc., 106 F.3d at 1154. Thus, we affirm the district court's denial of Powell Mountain's motion to dismiss.

IV.

We next address Powell Mountain's challenge to the district court's grant of summary judgment in favor of the Pruitt Heirs. According to Powell Mountain, summary judgment in favor of the Pruitt Heirs was inappropriate because the evidence does not establish proximate cause.

To prevail on a motion for summary judgment, a party must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) he is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 730 (4th Cir. 1996).

The parties agree that the Pruitt Heirs cannot prevail in this action unless they prove by a preponderance of the evidence that Powell Mountain's failure to comply with Virginia Regulation § 480-03-19.778.13(e), requiring the names and addresses of all surface owners in surface mining permit application, and § 480-03-19.778.15(b), requiring right of entry information, proximately caused the damages they alleged (the auger mining of the Three Acre Tract without their consent as surface owners). See 30 U.S.C.§ 1270(f) ("Any person who is injured in his person or property through the violation by any rule, regulation, order, or permit issued pursuant to [SMCRA] may bring an action for damages . . . ." (emphasis added)). The parties do not dispute that, for our purposes here, proximate cause is defined as an "`act or omission which, in natural and continuous sequence, unbroken by an efficient, intervening cause, produces the event, and without which that event would not have occurred.'" Jenkins v. Payne, 465 S.E.2d 795, 798 (Va. 1996) (quoting Beal v. Jones, 171 S.E.2d 851, 853 (Va. 1970)).

Application of the summary judgment standard here compels us to conclude that the Pruitt Heirs were not entitled to summary judgment

11

on the issue of liability. The record is devoid of evidence that Powell Mountain's failure to list all of the surface co-owners of the Pruitt tract on its permit application and/or its failure to submit right of entry documentation, "in natural and continuous sequence, unbroken by an efficient intervening cause," caused the auger mining of the Three Acre Tract without their consent. Id. Furthermore, the only evidence in the record on this issue cuts in favor of Powell Mountain. That evidence is the testimony of Bob Blackstock (Blackstock), the DMLR permitting officer who approved the permit at issue in this case. His testimony shows that it was the common practice of the DMLR, at all relevant times, to approve permits for surface coal mining that did not comply with the two regulations at issue. Specifically, with respect to Virginia Regulation § 480-03-19.778.13(e), requiring the names and addresses of all surface owners in the permit application, Blackstock testified that it was "more common than not" that the DMLR approved permits that identified surface owner heirs only by their family name, such as was done here. With respect to § 480-03-19.778.15(b), requiring right of entry information in the form of either written consent, a conveyance of the right to extract coal by surface mining, or documentation of legal authority to extract the coal by surface mining, Blackstock testified that it was the common practice of the DMLR at the time to approve permit applications that attempted to comply with this regulation by way of a written consent of fewer than all surface owners. Indeed, Blackstock testified that the consent of only one surface owner was sufficient even if more than one surface owner existed.

At bottom, the practices just outlined served as an efficient intervening cause, breaking the causal chain between Powell Mountain's violation of the regulations at issue and the damage alleged by the Pruitt Heirs. Put another way, the undisputed evidence in the record establishes that the Pruitt Heirs suffered damage because the permitting officer routinely approved permits based on incomplete permit applications, not because the incompleteness of Powell Mountain's permit application induced the permitting officer to approve it.

Despite the Pruitt Heirs' contention to the contrary, the fact that the DMLR revoked the permit after it received complaints about the incomplete nature of Powell Mountain's permit application is not evidence of proximate cause. The subsequent revocation simply does not

12

speak to whether the incompleteness of the permit application induced the permitting officer to issue Powell Mountain the permit in the first place. Because there is no evidence of proximate cause in the record, we hold the district court erred in denying Powell Mountain's motion for summary judgment.

V.

In conclusion, we hold that the district court: (1) properly denied Powell Mountain's motion to dismiss; (2) erroneously granted the Pruitt Heirs' motion for summary judgment as to liability; and (3) erroneously denied Powell Mountain's motion for summary judgment. Accordingly, we: (1) affirm the district court's denial of Powell Mountain's motion to dismiss; (2) vacate the district court's entry of summary judgment as to liability in favor of the Pruitt Heirs; (3) vacate the district court's final judgment; and (4) remand with instructions that the district court enter summary judgment in favor of Powell Mountain.[6]

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

_____

[6] In light of our disposition, the other issues raised by Powell Mountain's appeal are moot, as well as the issues raised by Pruitt Heirs' cross appeal.

13