1. Gale A. Norton, successor to Bruce Babbitt as Secretary of the Interior; Glenda Owens, successor to Katherine Henry as Acting Director of the Office of Surface Mining; and Michael O. Callaghan, successor to Michael

The Clerk is directed to mail copies of this Opinion and Order to counsel of record.

## THE WEST VIRGINIA HIGHLANDS CONSERVANCY, Plaintiff,

v.

## Gale A. NORTON, Secretary of the Department of the Interior; Glenda Owens, Acting Director of the Office of Surface Mining; and Michael O. Callaghan, Director, West Virginia Division of Environmental Protection,[1] Defendants.

No. CIV.A. 2:00–1062.

United States District Court,
S.D. West Virginia,
Charleston Division.

April 5, 2001.

Castle as Director of the West Virginia Department of Environmental Protection, are substituted as parties to this action. Fed. R.Civ.P. 25(d)(1).

Patrick C. McGinley, Morgantown, WV, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, Suzanne M. Weise, Morgantown, WV, Joseph M. Lovett, Charleston, WV, for Plaintiffs.

Benjamin L. Bailey, Brian J. Glasser, Bailey & Glasser, Charleston, WV, for Defendant Michael O. Callaghan, Director, West Virginia Division of Environmental Protection.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the motion of Defendant Director, West Virginia Division of Environmental Protection (DEP, the State Defendant) to dismiss this action because, *inter alia*, it is barred by the Eleventh Amendment of the United States Constitution.[2] The motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Allegations in the Complaint are taken to be true for purposes of this motion. Plaintiff is a nonprofit statewide conservation organization. Defendants Norton and Owens (Federal Defendants) administer, oversee, and enforce the provisions of the Surface Mining Control and Reclamation Act of 1977 (SMCRA, the Act), 30 U.S.C. §§ 1201, *et seq.* As Director of the Office of Surface Mining (OSM), Owens reviews state surface mining programs for compliance with SMCRA. Defendant Callaghan, Director of DEP, administers and enforces the provisions of the West Virginia Surface Coal Mining Reclamation Act (WVSCMRA), W. Va.Code §§ 22–3–1, *et seq.*

Some background on the Act is necessary to explain the Plaintiff's allegations. Under SMCRA, states may allow the federal government to oversee surface mining in the state or they may submit a state program to the Secretary of the Interior for approval. *See* 30 U.S.C. § 1253. West Virginia submitted a state program, which was approved conditionally on January 21, 1981. 30 C.F.R. § 948.10. The West Virginia program includes an alternative bonding system, which governs performance bonds required before surface mining permits may issue. *See* 30 U.S.C. § 1259; W. Va.Code § 22–3–11. Federal law requires that such bonds must be sufficient to assure completion of reclamation if the bond is forfeited and the regulatory authority must step in to complete the job. *See* 30 U.S.C. § 1259(a), (c).

In 1991 OSM required the state agency to amend its surface mine program to comply with SMCRA regarding performance bonds and bond release. The State did not comply. On October 4, 1995 OSM found the West Virginia alternative bonding system no longer met the requirements of federal law because "the amount of bond and other guarantees under the West Virginia program are not sufficient to assure the completion of reclamation." 60 Fed.Reg. 51900, 51910 (Oct. 4, 1995). On the same date, the federal agency disapproved parts of DEP's proposed amendment to the state alternative bonding system program. OSM ordered West Virginia to submit a proposed amendment (or description thereof) and a timetable for adoption to:

1) remove the twenty-five percent limitation on expenditure of funds for water treatment or otherwise provide for treatment of polluted water discharge from bond forfeiture sites, 30 C.F.R. § 948.16(jjj);

2) remove the state law provision that allows collection of the special reclamation tax only when the special reclamation fund's liabilities exceed its assets, 30 C.F.R. § 948.16(kkk); and

3) eliminate the deficit in the State's alternative bonding system and ensure sufficient funds will be available to complete reclamation, including treatment of polluted water, at all existing and future bond forfeiture sites. 30 C.F.R. § 948.16(lll). West Virginia failed to comply.[3]

---

**2.** The Court **GRANTS** Plaintiff's motion to file a surreply, and considers the surreply.

**3.** The amendments disapproved by OSM nonetheless were enacted by the West Virgi-

Plaintiff brought this civil action under the citizen suit provision of SMCRA, 30 U.S.C. § 1270(a)(2), alleging all Defendants have failed to perform mandatory duties under the Act. Regarding the State Defendant, Plaintiff alleges the DEP Director failed to comply with minimum federal standards for bonding (Count 4), failed to withhold approval of permit applications that do not meet those standards (Count 5), and failed to submit program amendments to make the state program consistent with SMCRA with regard to performance bonding as required by federal law (Counts 6 and 7). As a result, West Virginia does not have sufficient funds on hand to reclaim mine sites, treat polluted discharges, or manage coal waste impoundments.

DEP moved to dismiss arguing that this civil action, in reality, is based on state law and, therefore, 1) the State is immune under the Eleventh Amendment and 2) the citizen suit provision of SMCRA is inapplicable. Additionally, DEP contends 3) the claims involve only discretionary duties of the Director, 4) the Tenth Amendment bars some of the relief sought, 5) Plaintiff lacks standing, and 6) the Complaint is not ripe. The issues will be considered *seriatim*.

## II. DISCUSSION

### A. State Immunity

#### 1. The Eleventh Amendment and *Ex parte Young*

The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court. *Board of Trs. of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 961–62, 148 L.Ed.2d 866 (2001)(citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Federal courts will hear suits against a state defendant only when the state has consented to suit in federal court or Congress has unequivocally expressed its intent to abrogate the state's immunity.[4] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). West Virginia has not consented explicitly to waive sovereign immunity under SMCRA. The Supreme Court recently held constructive waivers of such immunity are disfavored. *College Sav. Bank*, 527 U.S. at 682, 119 S.Ct. 2219.

Despite these barriers, the *Ex parte Young* exception to Eleventh Amendment immunity remains generally available to private plaintiffs seeking prospective declaratory or injunctive relief from ongoing violations of federal law by state officers. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 293, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)(*Young* doctrine "a basic principle of federal law")(O'Connor, J., concurring). The *Young* exception is an "essential ... part of our sovereign immunity doctrine," *Alden v. Maine*, 527 U.S. 706, 748, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), that is necessary "to vindicate federal rights and hold state officials responsible to the su-

---

nia legislature and now are contained in state law at W. Va.Code § 22–3–11 and state regulations at 38 C.S.R. § 2–12.5(d). Although not part of an approved state program, DEP continues to adhere to these provisions.

4. SMCRA does not abrogate states' sovereign immunity. It explicitly allows citizens' suits only "to the extent permitted by the eleventh amendment." 30 U.S.C. § 1270(a)(1).

preme authority of the United States." *Pennhurst*, 465 U.S. at 105, 104 S.Ct. 900. "[A]vailability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).[5]

■ DEP argues *Young* does not apply to this action because the issues involve WVSCMRA, which is state, not federal law. According to the State Defendant's arguments, once a state surface mining program is approved by OSM, state law and regulations govern, and states have exclusive jurisdiction over all aspects of the program, including legal challenges.[6] In *Pennhurst, supra*, the Supreme Court held the Eleventh Amendment bars federal courts from enjoining state officers who violate state law. *See* 465 U.S. at 106, 104 S.Ct. 900. According to DEP, the duties the Conservancy invokes arise only under West Virginia's approved, primary jurisdiction to regulate surface mining, and the State Defendant is thus immune from any action seeking to enforce those duties in federal court. The Court disagrees.

### 2. Federal and State Roles Under SMCRA

SMCRA was enacted to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). Under the Act there is a "special kind of regulatory structure" in which the federal government "shares administrative responsibility with the states." *In re Permanent Surface Mining Litigation*, 653 F.2d 514, 518 (D.C.Cir.1981). As long as a state has an approved and properly enforced state program, the state has the "primary responsibility for achieving the purposes of the Act" and is the "exclusive 'on the scene' regulatory authority." *Id.* at 519. But because states were reluctant to impose stringent controls on their own surface mining industry, Congress found federal oversight and nationwide standards essential to ending minimal state enforcement and destructive interstate competition. *See id.* at 520–21.

Numerous provisions of SMCRA exemplify this interplay of state regulatory control under minimum federal standards and federal oversight.[7] Two are particularly

5. The Court has reviewed *Bell Atlantic Maryland, Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279 (4th Cir.2001) and concludes, contrary to the State Defendant's representations, that it does not limit *Young* jurisprudence in any manner affecting this action.

6. Section 1253(a) of the Act provides that states wishing to "assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations" shall submit a state program to the Secretary of the Interior for approval. 30 U.S.C. § 1253(a). In *Molinary v. Powell Mountain Coal Co., Inc.*, 125 F.3d 231, 236 (4th Cir.1997), our Court of Appeals held "[e]xclusive regulatory jurisdiction simply does not encompass exclusive adjudicatory jurisdiction." This Court previously relied on *Molinary* for the proposition that state regulations are issued pursuant to SMCRA, *id.*, and may be enforced in a citizen's suit in federal court under *Ex parte*

*Young*. *See Bragg v. Robertson*, No. 2:98–0636, slip op. at 9 (S.D.W.Va. Oct. 9, 1998); *see also Bragg*, 72 F.Supp.2d 642, 648–49 (S.D.W.Va.1999). *Bragg* is currently on appeal.

Because the Court finds the West Virginia alternative bonding system is not part of an approved state program, it need not enter the jurisdictional fray on the issue whether state law and regulations, enacted and promulgated to effectuate an approved state program, are state or federal law for *Young* exception purposes. For the same reason, the State Defendant's reliance on *Pennsylvania Fed'n of Sportsman's Clubs, Inc. v. Seif*, No. 1:CV–99–1791 (M.D. Pa. July 6, 2000, *reconsidered* Nov. 13, 2000), is misplaced.

7. For example, where a state fails to enforce any part of its state program, the Secretary may provide for federal enforcement. *See* 30 U.S.C. §§ 1254, 1271.

relevant to this action. First, Section 1260 provides:

No permit or revision application shall be approved unless the application affirmatively demonstrates and the regulatory authority finds in writing ... that—

(1) the permit application is accurate and complete and that *all the requirements of this chapter* and the State or Federal program *have been complied with*[.]

30 U.S.C. § 1260(b)(1) (emphasis added). Even where a state operates an approved program, the federal law is not supplanted but, under this section, remains in full force and effect. Compliance with all requirements of the federal Act is mandatory for the issuer of permits, whether state or federal.

Second, Section 1255 provides, "No state law or regulation ... shall be superseded by any provision of this chapter or any regulation issued pursuant thereto, *except insofar as such State law or regulation is inconsistent with the provisions of this chapter.*" [8] 30 U.S.C. § 1255(a) (emphasis added). The only limitation to this preemption rule is for "any State law or regulation ... which provides for more stringent land use and environmental controls and regulations of surface coal mining and reclamation operation than do the provisions of this chapter." 30 U.S.C. § 1255(b).

### 3. West Virginia Alternative Bonding System

No person may surface mine coal without a permit issued by the state or federal regulatory authority. 30 U.S.C. § 1256(a). Before a surface coal mining and reclamation permit issues, SMCRA requires the applicant to file a performance bond, the amount of which "shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture[.]" 30 U.S.C. § 1259(a). Any alternative bonding system approved as part of a state program must "achieve the objectives and purposes of the bonding program pursuant to this section [1259]." 30 U.S.C. § 1259(c).

West Virginia has a two-tier alternative bonding system. The first tier requires permittees to post a site-specific reclamation bond of between $1,000 and $5,000 per acre of proposed surface disturbance. *Cat Run Coal Co. v. Babbitt,* 932 F.Supp. 772, 775 n. 7 (S.D.W.Va.1996); W. Va.Code § 22–3–12(c)(1); C.S.R. § 38–2–11.6.a. Because the amount of this bond is artificially capped at $5,000 per acre, it is often inadequate to cover the full costs of reclamation. *Cat Run,* 932 F.Supp. 772, n. 7. Accordingly, West Virginia created the second tier, a bond pool known as the Special Reclamation Fund, which supplements the site-specific reclamation performance bonds furnished by permittees. The Special Reclamation Fund is funded by a fee of three cents per ton of coal mined assessed against "every person conducting surface coal mining operations." W. Va.Code, § 22–3–11(g).

In 1995 OSM reported that annual reviews since 1989 found West Virginia's alternative bonding system incapable of

---

**8.** While the preemptive force of this section is apparently an issue of first impression in the federal courts, the Supreme Court of Appeals of West Virginia recently examined the statute and agreed with DEP's position, asserted in that tribunal, that state surface mining laws inconsistent with SMCRA were not enforceable as state law, but were preempted by SMCRA. *See DK Excavating, Inc. v. Miano,* No. 28478, —— S.E.2d ——, 2001 WL 179838 (W.Va. Feb. 22, 2001).

meeting the federal requirements. *See* Compl. ¶ 19 (citing 60 Fed.Reg. 51900, 51910): The federal regulation, section 800.11, allows OSM to approve an alternative bonding system,

> if it will achieve the following objectives and purposes of the bonding program:
>
> (1) The alternative must assure that the regulatory authority will have available sufficient money to complete the reclamation plan for any areas which may be in default at any time; and
>
> (2) The alternative must provide a substantial economic incentive for the permittee to comply with all reclamation provisions.

30 C.F.R. § 800.11(e). OSM found West Virginia's alternative bonding system liabilities substantially exceeded its assets. Based on state estimates as of June 30, 1994, the excess liabilities were $22.2 million, an estimate that also failed to include the cost of treating polluted water discharged from bond forfeiture sites.[9] 60 Fed.Reg. at 51910.

> An alternative bonding system cannot be allowed to incur a deficit if it is to have available adequate revenues to complete the reclamation of all outstanding bond forfeiture sites. Alternative bonding systems must include reserves and revenue-raising mechanisms adequate to ensure completion of the reclamation plan and fulfillment of the permittee's obligations, including any water treatment needs.

*Id.*

▮ Because OSM found West Virginia's alternative bonding system "no longer meets the objectives and purposes of the conventional bonding program set forth in [section 1259] of SMCRA," *id.*, it is less rigorous than, and inconsistent with, Chapter 25 of SMCRA. Accordingly, the West Virginia alternative bonding system is superseded by the federal bonding program.[10] 30 U.S.C. § 1255(a); *see also* 30 U.S.C. § 1259.

---

9. OSM noted the Supreme Court of Appeals of West Virginia ruled that the treatment of acid mine drainage is a component of reclamation and that the DEP has a mandatory, nondiscretionary duty to utilize moneys from the special reclamation fund to treat such drainage when the proceeds from forfeited bonds are less than the actual cost of reclamation. 60 Fed.Reg. at 51910 (citing *West Virginia Highlands Conservancy, Inc. v. West Virginia Div. of Environmental Protection*, 447 S.E.2d 920, 191 W.Va. 719 (1994)).

10. The State Defendant proposes that if the state is not meeting minimum federal standards with respect to some aspect of the surface mine program, the remedy is either for OSM to offer a suggested plan or for OSM to take over the program. (Mem. in Supp. of Mot. to Dismiss, 14, 15); *see also* 30 U.S.C. § 1254(a)(1)–(3), (g). If one were to accept this analysis, the preemption provisions of the federal Act are not automatically preemptive, but require an affirmative act on the part of the federal government.

The State Defendant overlooks 1) Section 1255, providing for state laws inconsistent and less rigorous than federal law to be superseded by federal law, and 2) the Supremacy Clause of the United States Constitution. It also ignores its own previous position asserted in West Virginia's highest court:

> In support of its position, DEP looks to the Supremacy Clause found in the United States Constitution and its mandate that the "Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI. The West Virginia constitution specifically acknowledges our obligation to observe federal law in stating similarly that federal law "shall be the supreme law of the land." W. Va. Const. art I, § 1. DEP takes the position that its hands are tied by federal law, based on the clear statutory pronouncement of preemptive effect with regard to state plans that are inconsistent with its provisions.

*DK Excavating, Inc.*, 2001 WL 179838, at *4 (citing 30 U.S.C. § 1255).

### 4. Counts 4, 5, and 7 Invoke Mandatory Duties of DEP Under Federal Law

#### a. Counts 4 and 5

Count 4 of the Complaint alleges the DEP Director violated his mandatory duty to maintain a performance bond program which complies with minimum federal standards for bonding. (Compl. ¶¶ 82–85.) As discussed above, OSM has disapproved substantial provisions of the West Virginia alternative bonding system and found the West Virginia system failed to meet "the objectives and purposes of the conventional bonding program." (Compl. ¶ 19.) In particular, OSM found the West Virginia program fails to provide that "the amount of the bond shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture[,]" as required by federal law. (Compl. ¶¶ 19, 29–39, 49 (citing 30 U.S.C. § 1259(a), (c)).) Because West Virginia's alternative bonding system has been found inconsistent with and less rigorous than the minimum federal standards, the State Director has a nondiscretionary duty to comply with the minimum federal standards for bonding. 30 U.S.C. § 1255(a).

Count 5 alleges the Director's violation of his mandatory duty not to approve any permit unless "the permit application is accurate and complete and the applicant has complied with all requirements of SMCRA." (Compl. ¶ 87 (citing 30 U.S.C. § 1260(b)(1)).) In particular, state surface mining permits must comply with the federal requirements for performance bonding.

■ The Court **FINDS** and **CONCLUDES** it has jurisdiction of Counts 4 and 5 of this action, which arise under federal SMCRA law and allege violations of SMCRA as required by its citizen suit provision. The viability of Counts 4 and 5 is not barred by Eleventh Amendment state immunity because they seek only to enjoin the DEP Director from violating federal law.

#### b. Count 6

Counts 6 and 7 state identical claims, but under different subsections of the SMCRA citizen suit provision, that the DEP Director has failed to submit state program amendments required by OSM, an alleged nondiscretionary duty under 30 C.F.R. § 732.17(f)(1). Count 6 alleges the violation is enforceable under subsection (a)(1) of the SMCRA citizen suit provision, 30 U.S.C. § 1270(a)(1), which explicitly includes violations of any "rule, regulation, order or permit issued pursuant to this chapter."

■ Legislative history, recounted in *Oklahoma Wildlife Fed'n v. Hodel*, 642 F.Supp. 569 (N.D.Okla.1986), supports the State Defendant's interpretation that subsection (a)(1) provides for citizen suits against *operators*, including government agencies operating surface mines. *See also Save Our Cumberland Mountains, Inc. v. Lujan*, 963 F.2d 1541 (D.C.Cir. 1992) (adopting *Oklahoma Wildlife* account of legislative history and demonstrating parallels among Clean Air Act, Clean Water Act and SMCRA citizen suit provisions that support this interpretation). Consequently, this portion of the citizen suit, alleging violations of the DEP's duties as *regulator*, is not properly assertable under (a)(1). Accordingly, Count 6 is **DISMISSED**.

#### c. Count 7

■ Count 7 alleges the DEP Director has failed to submit state program amendments required by OSM, an alleged nondiscretionary duty under 30 C.F.R. § 732.17(f)(1). Count 7 is properly asserted under citizens suit provision (a)(2). 30 U.S.C. § 1270(a)(2). The State Defendant

objects that the SMCRA citizen suit provision for violations of regulators' duties, Section 1270(a)(2) pertains only to failures to "perform any act or duty under this chapter" and the regulations are not duties "under this chapter." The regulation requires:

> (f)(1) If the Director determines that a State program amendment is required, the State regulatory authority shall, within 60 days after notification of that decision, submit to the Director either a proposed written amendment or a description of an amendment to be proposed that meets the requirements of the Act and this chapter, and a timetable for enactment which is consistent with established administrative or legislative procedures in the State.

30 C.F.R. § 732.17(f)(1).

This regulation carries out the Congressional mandate, found in *this chapter* of SMCRA, that the Secretary "publish and promulgate such rules and regulations as may be necessary to carry out the purposes and provisions of this chapter." 30 U.S.C. § 1211(c)(2). In particular, the regulation carries out the purposes of Section 1253(c), which provides for state action after the Secretary has disapproved any proposed state program. After such disapproval, "[t]he State shall have sixty days in which to resubmit a revised State program or portion thereof." 30 U.S.C. § 1253(c). The regulation is more State-friendly, allowing for the vicissitudes of administrative and legislative (in)action. The State has a mandatory duty to submit amendments (a "revised state program or portion thereof") within 60 days. Plaintiff alleges DEP has failed to comply.

Count 7 alleges a violation of the federal statute, as well as the federal regulation.[11]

Accordingly, the Court **FINDS** and **CONCLUDES** that Count 7 states a violation of a mandatory duty of the DEP Director under "this chapter" of SMCRA, and may be maintained under the SMCRA citizen suit provision permitting exercise of jurisdiction "to the extent permitted by the eleventh amendment." 30 U.S.C. § 1270(a)(2).

### B. Tenth Amendment

The Tenth Amendment to the United States Constitution reserves to the states or the people those powers not expressly delegated to the federal government by the Constitution. The State Defendant asserts Plaintiff seeks the Court's assistance to commandeer the state legislative processes and compel the state to implement regulations and pass legislation that adopts federal standards, in violation of the Tenth Amendment.

The Supreme Court previously responded to this line of criticism of states' duties under SMCRA:

> [T]he States are not compelled to enforce the steep-slope standards, to expend any state funds, or to participate in the federal regulatory program in any manner whatsoever. If a State does not wish to submit a proposed permanent program that complies with [SMCRA] and implementing regulations, the full regulatory burden will be borne by the Federal Government. Thus, there can be no suggestion that the Act commandeers the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.

*Hodel v. Virginia Surface Mining and ·Reclamation Ass'n, Inc.,* 452 U.S. 264, 289,

---

11. Because it is unnecessary to answer the questions presented, the Court declines to reach the issue of whether the citizen suit's second subsection, which provides for enforcement of mandatory duties under "this chapter," also extends to enforcement of regulations promulgated thereunder.

101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (citations omitted). The Court continued:

> The most that can be said is that the Surface Mining Act establishes a program of cooperative federalism that allows the States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs.

*Id.* (citations omitted). Adding to its analysis, the Supreme Court explained Congress has authority to displace or preempt state laws regulating private activity affecting interstate commerce when these laws conflict with federal law. *See id.* at 290, 101 S.Ct. 2352. "Although such congressional enactments obviously curtail or prohibit the States' prerogatives to make legislative choices respecting subjects the States may consider important, the Supremacy Clause permits no other result." *Id.* (citations omitted).

■ Under SMCRA's citizen suit provision, "any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to *compel compliance with this chapter.*" 30 U.S.C. § 1270(a) (emphasis added). Plaintiff seeks to enforce mandatory duties under SMCRA. The DEP Director allegedly has failed to perform these duties although, in implementing a state program, the Director accepted the strictures of federal law. The Supremacy Clause upholds the primacy of SMCRA, which requires state surface mining law conform to and be at least as rigorous as federal surface mining law. 30 U.S.C. §§ 1255(a), (b). This citizen suit seeks to compel compliance with federal law. The Tenth Amendment is not offended by these procedures.

## C. Standing

DEP argues Plaintiff lacks standing because the Complaint 1) does not identify an adversely affected organization member and 2) does not allege that correcting the alleged deficiencies in the West Virginia bonding program will redress Plaintiff's injuries.

■ To demonstrate standing, Plaintiff must show: 1) an "injury in fact" which is "(a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). An association has standing to bring suit on behalf of its members when: 1) its members would otherwise have standing to sue in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.,* 18 F.3d 1161, 1165–66 (4th Cir.1994)(citing *Hunt v. Washington Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

■ For purposes of ruling on a motion to dismiss for want of standing, the Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Court may allow or require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. *Id.* Plaintiff has provided affidavits from three members averring they have suffered harm to

their aesthetic, environmental, and economic interests as a result of DEP's failure to cure the deficiencies in its alternative bonding system. The affidavits demonstrate the organizational Plaintiff has, within its membership, adversely affected individuals.

██ The State Defendant also argues Plaintiff's allegations of causation and prospective redressability are non-specific and wholly speculative. The Complaint, however, alleges:

43. In its 1999 annual report on the West Virginia state program, OSM said the DEP spends special reclamation fund money at only five of the sixty-seven abandoned mine sites with polluted discharges and that the fund will not be sufficient to eliminate the backlog of unreclaimed forfeiture sites for twenty years.

44. There are at least 11,400 acres of unreclaimed mine sites in the State that should have been reclaimed by DEP using money from the special reclamation fund. The fund is inadequate to complete this reclamation.

45. DEP's special reclamation fund does not have sufficient funds to address the potential risks and consequences of abandoned, unreclaimed or potential future coal waste impoundment failures in West Virginia.

(Compl.) These paragraphs allege insufficient reclamation funds are causing, and will cause, the harms complained of. Contrary to DEP's argument, to establish redressability Plaintiff need not demonstrate further that additional bond funds will "cause [DEP] to change any prospective discretionary decisions with respect to reclamation of abandoned mine lands or permits." (Mem. in Supp. of Mot. to Dismiss, 18.) Redressability does not require a plaintiff to establish that the defendant

agency will actually exercise its discretion in any particular fashion in the future. *See Animal Legal Defense Fund v. Glickman,* 154 F.3d 426, 443–44 (D.C.Cir.1998)(citing *Federal Election Comm'n v. Akins,* 524 U.S. 11, 25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998)). Plaintiff has standing to maintain this civil action.

## D. Ripeness

Finally the State Defendant proposes Plaintiff's claims are not "fit for judicial review" because they do not involve "an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging party." *Arch Mineral Corp. v. Babbitt,* 104 F.3d 660, 665 (4th Cir.1997) (citations omitted). The standard Defendant proposes applies specifically to judicial review of agency action, seeking relief under the Administrative Procedure Act, 5 U.S.C. §§ 701–704. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Plaintiff's challenge is not to an agency action, such as a permitting decision, but to the agency's failure to observe minimum requirements of federal law.

██ Ripeness doctrine generally reflects the constitutional requirement that courts should decide only "a real, substantial controversy," not a mere hypothetical question. Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3532.2 at 137 (1984). A case is not ripe where anticipated injuries are too remote and uncertain, or the allegations involve contingent future events.[12] Here, however, Plaintiff's injuries are alleged to be actual and ongoing results of the Federal

---

12. Hence the asserted requirement that agen-

cy actions be final before judicial review.

and State Defendants' failures to perform their mandatory duties under SMCRA. The issues are ripe for review.

### III. CONCLUSION

The Court **FINDS** and **CONCLUDES** this action is not barred by the Eleventh Amendment to the United States Constitution, that Plaintiff has standing, and the issues are ripe for this Court's review. Accordingly, the State Defendant's motion to dismiss is **DENIED**, except as to Count 6, which is **DISMISSED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to publish it on the Court's website at http://www.wvsd.uscourts.gov.