MEMORANDUM OPINION AND PRELIMINARY INJUNCTION HEARING ORDER
 

 HADEN, Chief Judge.
 

 Pending is Plaintiffs motion for a preliminary injunction on Count 4 of the Complaint. For reasons discussed below, the Court DISMISSES this action against the Defendant Director (now Secretary) of the West Virginia Division of Environmental Protection (DEP) because it is barred by the Eleventh Amendment of the United States Constitution. Consequently, the Court lacks jurisdiction to entertain Plaintiffs motion for the injunction, and it is DENIED.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 On November 14, 2000 Plaintiff West Virginia Highlands Conservancy (Conservancy) filed this civil action under the citizen suit provision of the Surface Mining Control and Reclamation Act (SMCRA), 30 [u.S.C. § 1270(a)(2). The Complaint al-.eged the state alternative bonding program for surface mine reclamation bonds was inadequate to meet the minimum requirements of SMCRA. Further, it alleged that in 1995 the Office of Surface Mining (OSM) found the state program did not meet the objectives and purposes of federal law. OSM ordered the State to bring the program into compliance, but as of 2000 the State had failed to do so. Instead, the State DEP continued to approve surface mining permits although the combination of site specific bonds and provision of a special reclamation fund demonstrably were inadequate for the state to reclaim the land and treat water should the bonds be forfeit.
 

 In lieu of an Answer, the Defendant DEP Secretary moved to dismiss contending,
 
 inter alia,
 
 the Eleventh Amendment of the United States Constitution barred the action against the State Defendant. On April 5, 2001 the Court denied the motion, finding SMCRA provided for federal preemption of inconsistent state law.
 
 West Virginia Highlands Conservancy v. Norton,
 
 137 F.Supp.2d 687, 694-95 (S.D.W.Va.2001) (citing 30 U.S.C. § 1255(a)). Because OSM had found West Virginia’s alternative bonding system was incapable of meeting the objectives and purposes of the conventional federal bonding program, the Court concluded the state bonding program was superseded by federal law.
 
 Id.
 
 at 694.
 

 On April 24, 2001 our Court of Appeals redefined federal and state roles under SMCRA.
 
 Bragg v. West Virginia Coal Ass’n,
 
 248 F.3d 275, 289-90 (4th Cir.2001). In its ruling, federal preemption pursuant to Section 1255(a) played no part.
 

 On May 15, 2001 the Conservancy moved for a preliminary injunction on Count 4 of the Complaint, which the Court set for hearing on May 16, 2001.
 

 
 *476
 
 II. PRELIMINARY INJUNCTION HEARING
 

 Plaintiffs prayer sought specific injunc-tive relief of a progressive nature. First, it sought to preliminarily enjoin the Defendant DEP Secretary from issuing surface mine permits unless they included site specific bonds sufficient to ensure completion of the reclamation plan, as required by federal law.
 
 See
 
 30 U.S.C. § 1259(a). Additionally, Plaintiff moved to enjoin DEP from issuing any and all surface mining permits if, by October 1, 2001, the State had failed to adopt revisions to the special reclamation fund adequate to eliminate the fund deficit and meet future liabilities. To carry its burden, Plaintiff called Secretary Callaghan as its first witness.
 

 Secretary Callaghan testified West Virginia has a two-tier alternative reclamation bonding system.
 
 [1]
 
 The first tier is a site specific bond artificially capped at five thousand dollars ($5000) per acre. The second tier is a special reclamation fund funded by a(3<t) cent per ton tax on coal. Site specific bond amounts are determined using a “matrix,” based on site specific factors. Callaghan testified that current site specific bonds are insufficient to effect reclamation of the mine site if the owner or operator walks away, and that the special reclamation fund is “absolutely insufficient,” “woefully underfunded” and “woefully inadequate” to do the job.
 

 According to Callaghan, DEP estimates current state reclamation liabilities, that is, costs for unreclaimed mine sites falling under SMCRA,
 
 [2]
 
 are: for land reclamation, twenty-four million dollars ($24,000,000); for water reclamation, seventeen to eighteen million ($17,000,000 to 18,000,000); and, for annual water treatment, from one million one hundred thousand ($1,100,000) to fifteen million dollars ($15,000,000). The special reclamation fund has twelve million dollars ($12,000,000). According to Callaghan the fund is “basically insolvent.”
 

 DEP figures show two hundred forty-five (245) past bond forfeitures in the state. Eighty-eight (88) of those forfeiture sites require water treatment, forty (40) are “urgent.” Currently DEP is able to treat five (5) of them. Due to inadequate funding, the remaining eighty-three (83) mine sites are in continuous violation of effluent water pollution limits.
 

 Callaghan testified the agency’s current land reclamation efforts consisted only of “eliminating hazards,” that is, knocking down high walls and planting ground cover. DEP has never reclaimed a mine site to meet the reclamation plan and never determines the bond amount that would be necessary to do so. He testified the average cost for the current minimal land reclamation was five thousand four hundred dollars ($5400) an acre, more than the five thousand ($5000) per acre statutory cap on site specific bonds. Callaghan characterized the current bond requirements as a “system set up to fail.”
 

 Secretary Callaghan acknowledged the alternative bonding system does not meet the requirements of federal law because the funding is totally inadequate. The
 
 *477
 
 Secretary agreed the State surface mine bond reclamation program is less stringent than and inconsistent with SMCRA.
 

 He opined, however, that DEP could change its program to determine site-specific bond amounts, probably within a “few weeks” with the help of consultants. While adequate bonds would not solve the agency’s fifty million dollar ($50,000,000) deficit, they would avoid increasing future liability. During his brief tenure Callaghan has advocated a twenty cent (20$) per ton tax on coal as the solution to the reclamation fund deficit. He acknowledged, however, that the West Virginia Legislature in its 2001 session declined to lift the artificial $5000 cap on site specific bonds. According to the Secretary, DEP will continue surface mine reclamation bonding under the current state program while searching for a “global solution” to the fund’s enormous liabilities. The Secretary testified DEP may not change permit programs “unless directed to do otherwise.”
 

 The Court also heard testimony from Benjamin Greene, Chairman of Defendant-Intervenor West Virginia Coal Association (Coal Association),
 
 [3]
 
 and William Raney, President of the same organization. These witnesses, called adversely by the Plaintiff, conceded that figures presented at the hearing demonstrated the alternative bonding system was inadequate, but Raney questioned the agency’s water treatment projections as “Ouija board science.” He stated the industry, not the taxpayer, should bear the burden of land reclamation and water treatment at forfeited mine sites, but insisted the liabilities must be quantified responsibly.
 

 Plaintiff rested. DEP, the Federal Defendants, and the Coal Association called no witnesses and otherwise declined to present evidence.
 

 At oral argument, the State Defendant reiterated his argument, presented in his motion to dismiss, that the Eleventh Amendment bars this action. Defendant cited the Court of Appeals’ - .ruling in
 
 Bragg, supra,
 
 which was decided after this Court’s Memorandum Opinion and Order of April 5, 2001, denying the motion to dismiss. Ever mindful of the need to assure itself of subject matter jurisdiction, and cognizant that an Eleventh Amendment bar would deny Plaintiff any potential success on the merits, the Court must reconsider its April 5 ruling in light of
 
 Bragg.
 

 III. DISCUSSION
 

 A. Sovereign Immunity and SMCRA State Programs
 

 The Eleventh Amendment guarantees state sovereign immunity: noncon-senting states may not be sued by private individuals in federal courts.
 
 Board of Trs. of the Univ. of Alabama v. Garrett,
 
 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (citations omitted). Under the
 
 Ex parte Young
 
 exception to the sovereign immunity doctrine, federal courts may order prospective declaratory or injunctive relief from ongoing violations of federal law by state officers.
 
 Ex parte Young,
 
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In
 
 Pennhurst State School & Hospital v. Halderman,
 
 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court held the Eleventh Amendment bars federal courts from enjoining state officers who violate
 
 state
 
 law.
 

 In
 
 Bragg,
 
 our Court of Appeals held state sovereign immunity, guaranteed by the Eleventh Amendment of the United States Constitution, barred assertion of a
 
 *478
 
 SMCRA citizen suit against the West Virginia DEP for alleged violation of an approved state surface mining program. The
 
 Bragg
 
 plaintiffs had asserted DEP violated a state surface mining regulation, the so-called “buffer zone rule.”
 
 See
 
 38 W. Va.C.S.R. § 2-5.2. The rule, patterned on the federal regulation,
 
 see
 
 30 C.F.R. § 816.57, was enacted pursuant to the state surface mining program approved by OSM under SMCRA and incorporated in state law.
 
 See Bragg,
 
 248 F.3d 275, 287-88. The Appeals Court held approved state surface mining law and regulations, enacted and promulgated pursuant to SMCRA, were state law. Accordingly, under
 
 Penn-fwrst,
 
 Plaintiffs’ SMCRA citizen suit against the state DEP Director was barred.
 

 In so holding, the
 
 Bragg
 
 court explicated the “cooperative federalism” framework of SMCRA:
 

 
 *462
 
 “A ‘warranty’ which provides that consumers’ only remedy is a repeated application of termiticide, according to previously employed methods which had utterly failed to produce results, totally ignores the objective of the underlying transaction, that is, the elimination of the termite infestation in the consumer’s home. Repeated diluvian drenchings of termiticide, as ineffective as they are copious, are of no benefit to the homeowner, and at worst mislead the homeowner into relying on Orkin’s treatment in lieu of more effective remedies.”
 
 *478
 

 Thus, SMCRA provides for either State regulation of surface coal mining within its borders or federal regulation, but not both.
 
 The Act expressly provides that one or the other is exclusive,
 
 see
 
 30 U.S.C. §§ 1253(a), 1254(a),
 
 [4]
 
 with the exception that an approved State program is always subject to revocation when a State fails to enforce it,
 
 see id.
 
 §§ 1253(a); 1271(b). Federal oversight of an approved State program is provided by the Secretary’s obligation to inspect and monitor the operations of State programs.
 
 See id.
 
 §§ 1267, 1271.
 
 Only if an approved State program is revoked,
 
 as provided in § 1271, however,
 
 does the federal program become the operative regulation for surface coal mining in any State that has previously had its program approved. See id.
 
 §§ 1254(a), 1271.
 

 In sum, because the regulation is mutually exclusive, either federal law or State law regulates coal mining activity, but not both simultaneously. Thus, after a State enacts statutes and regulations that are approved by the Secretary, these statutes and regulations become operative, and the federal law and regulations, while continuing to provide the “blueprint” against which to evaluate the State’s program, “drop out” as operative provisions. They are reengaged only following the instigation of a.§ 1271 enforcement proceeding by the Secretary of the Interior.
 

 Bragg,
 
 248 F.3d at 289 (emphasis added).
 

 B. West Virginia Alternative Bonding System
 

 In denying the State Defendant’s initial motion to dismiss, this Court also considered the interplay of federal and state roles under SMCRA.
 
 See Conservancy,
 
 137 F.Supp.2d at 692-93. The Court particularly relied on Section 1255 of SMCRA, which provides, “No state law or regulation ... shall be superseded by any provision of this chapter or any regulation issued pursuant thereto,
 
 except insofar as such State lato or regulation is inconsistent with the provisions of this chapter.”
 
 30 U.S.C. § 1255(a)(emphasis added).
 
 [5]
 

 
 *479
 
 In 1995, OSM approved with some exceptions amendments to the West Virginia alternative bonding system which,
 
 inter alia,
 
 raised the site specific bond cap from one thousand dollars ($1000) to five thousand dollars ($5000) and increased the coal tax from one to three cents a ton.
 
 See
 
 60 Fed.Reg. 51903, 51906 (Oct. 4, 1995). OSM reported, however, that “[o]n October 1, 1991 ... OSM notified West Virginia in accordance with 30 C.F.R. 732.17 that its regulatory program no longer met all. Federal requirements.”
 
 Id.
 
 at 51909 (citation omitted). The federal agency’s annual reviews since 1989 showed the State alternative bonding system’s liabilities exceeded assets and, by 1994, the deficit was. twenty-two million two hundred thousand dollars ($22,200,000).
 
 Id.
 
 While approving the proposed increases in the West Virginia site specific bond cap and the per-ton tax rate, OSM found these increases “still insufficient to ensure com-píete reclamation, including treatment of polluted water.”
 
 Id.
 
 at 51910. OSM concluded:
 

 Therefore, the [OSM] Director finds that
 
 West Virginia’s alternative bonding system no longer meets the requirements of SO CFR 800.11(e)
 

 [6]
 

 Furthermore, it is not achieving the objectives and purposes of the conventional bonding program set forth in section 509 [SO U.S.C. § 1259] of SMCRA since the amount of bond and other guarantees under the West Virginia program are not sufficient to assure the completion of reclamation.
 
 Hence, the Director is requiring West Virginia to eliminate the deficit in the State’s alternative bonding system and to ensure that sufficient funds will be available to complete reclamation, including the treatment of polluted water, at all existing and future bond forfeiture sites.
 
 [7]
 

 
 *480
 

 Id.
 
 (emphasis added). The Court notes that more than five years after OSM approved increases in the site-specific bond cap and tax rate, the deficit has not been eliminated. Rather the deficit is now fifty million dollars, and possibly much more when long-term water treatment costs ultimately are quantified.
 

 For these reasons, this Court held:
 

 Because OSM found West Virginia’s alternative bonding system “no longer meets the objectives and purposes of the conventional bonding program set forth in [section 1259] of SMCRA,” ... it is less rigorous than, and inconsistent with, Chapter . 25 of SMCRA. Accordingly, the West Virginia alternative bonding system is superseded by the federal bonding program.
 

 Conservancy,
 
 137 F.Supp.2d at 694. Based on Section 1255 preemption, the Court found Plaintiffs Complaint invoked federal, not state, law and allowed the action to proceed against the State Defendant.
 
 Id.
 

 C. Application of Bragg Principles
 

 Our Court of Appeals’ instruction in
 
 Bragg
 
 overrides the preceding analysis of this Court.
 

 ... SMCRA provides for
 
 either
 
 State regulation of surface coal mining within its borders
 
 or
 
 federal regulation, but not both_Only if an approved State program is revoked, as provided in § 1271,
 
 [8]
 
 however, does the
 
 federal
 
 program become the operative regulation for surface coal mining in any State that has previously had its program approved.
 

 Bragg,
 
 248 F.3d at 289 (citations omitted).
 

 Pursuant to the
 
 Bragg
 
 analysis, an OSM-approved State surface mining program becomes and remains exclusively state law until revoked by the federal regulator. West Virginia’s state program was conditionally approved on January 21,1981 and the alternative bonding system was approved' on March 1, 1983. The State program has not been revoked pursuant to SMCRA Section 1271, nor has a Section 1271 enforcement proceeding been initiated. Accordingly, under the direction of
 
 *481
 
 our Court of Appeals, this Court is forced to accept the conclusion that the West Virginia program is state law.
 
 [9]
 

 In SMCRA Congress directed that state alternative reclamation bonding systems must “achieve the objectives and purposes of the bonding program pursuant to [section 1259],” 30 U.S.C. § 1259(c). Congress required “the amount of such bonds shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture.” 30 U.S.C. § 1259(a). Clearly, in West Virginia this requirement is being violated. As OSM announced in the Federal Register and the State Secretary further elucidated, this, federal law has been ignored and violated by West Virginia for more than a decade. The results are obvious: an immense state liability incurred by the mine operators, but borne by the taxpayers, and on-going pollution of the State’s streams.
 
 Bragg
 
 teaches, however, federal law is subsumed in the approved state program and, even where inconsistent with federal law and disapproved by OSM, must be enforced as state law, absent affirmative OSM action. Under
 
 Ex parte Young
 
 and
 
 Pennhurst, supra,
 
 this Court cannot order a State official to follow state law, and it lacks jurisdiction over a civil action seeking such relief.
 

 IV. CONCLUSION
 

 Lacking subject matter jurisdiction, therefore, the Court DISMISSES the State Defendant, DEP Secretary Callaghan, from this action. Plaintiffs motion for preliminary injunctive relief against the State Defendant is DENIED as moot.
 

 The Clerk is directed to send a copy of this Memorandum Opinion and Hearing Order to counsel of record and to publish it on the Court’s website at http://www.wvsd.uscourts.gov.
 

 [3]
 

 . The Court permitted intervention by the Coal Association by Order of May 14, 2001.
 

 [1]
 

 . Before any surface mining permit issues, SMCRA requires a performance bond in an amount “sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture!.]” 30 U.S.C. § 1259(a). With approval of OSM, states may enact an alternative bonding system "that will achieve the objectives and purposes of the bonding program pursuant to this section [1259].”
 
 Id.
 
 § 1259(c).
 

 [2]
 

 . SMCRA was enacted in 1977. Mines abandoned and unreclaimed prior to its enactment! are reclaimed and restored using the Aban-I doned Mine Reclamation Fund.
 
 See
 
 30 U.S.C.I §§ 1231-43. I
 

 [4]
 

 . Section 1253(a) provides a State may assume "exclusive jurisdiction over the regulation of surface coal mining and reclamation operations” by having its State program approved by OSM. Section 1254(a) provides that otherwise the Secretary will have the same "exclusive jurisdiction” over the regulation of surface coal mining. Regarding these exclusivity provisions, our Court of Appeals previously held "[e]xclusive regulatory jurisdiction simply does not encompass exclusive adjudicatory jurisdiction.”
 
 Molinary v. Powell Mountain Coal Co.,
 
 125 F.3d 231, 236 (4th Cir.1997).
 
 Bragg
 
 thus appears to reverse the
 
 Molinary
 
 analysis and extend state and federal exclusivity beyond regulatory to adjudicatory jurisdiction.
 

 [5]
 

 . The Supreme Court of Appeals of West Virginia similarly concluded that state surface mining laws inconsistent with SMCRA were I not enforceable as state law, pursuant to|
 
 *479
 
 SMCRA Section 1255(a).
 
 See DK Excavating, Inc. v. Miano,
 
 209 W.Va. 406, 549 S.E.2d 280 (2001). At oral argument before this Court, the State Defendant argued West Virginia's highest court simply adopted federal law as state law. Before the State Court, however, the same State Defendant contended that Section 1255(a) preemption buttressed by the Supremacy Clause of the United States Constitution required the State Court to observe federal law, "the supreme law of the land.”
 
 Id.
 
 549 S.E.2d at 284. The state court may characterize its action as "adoption” of federal law or "interpretation” of state law, but by constitutionally-buttressed preemption, federal law becomes operative in the state.
 

 Ironically, the
 
 DK Excavating
 
 decision, unless reconsidered by the West Virginia court or reversed by .the Supreme Court of the United States, recognizes that the federal regulatory prong of SMCRA preempts inconsistent and inadequate state law, while
 
 Bragg,
 
 the controlling federal decision, holds "our federalism” commits regulation of state-adopted SMCRA programs, however inadequate and inconsistent with federal law, to West Virginia alone, unless and until federal revocation proceedings are initiated by the Secretary of the Interior.
 

 [6]
 

 . The regulation requires an approved alternative bonding system to achieve objectives and purposes of the bonding program:
 

 (1) The alternative must assure that the regulatory authority will have available sufficient money to complete the reclamation plan for any areas which may be in default at anytime; and
 

 (2) The alternative must provide a substantial economic incentive for the permittee to comply with all reclamation provisions.
 

 30 C.F.R. § 800.11(e);
 
 see also
 
 30 U.S.C. §§ 1259(a), (c).
 

 [7]
 

 . In its Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, which the Court has considered, Intervenor argues a "fair reading” reveals this OSM action is merely an admonishment and does not institute Section 1271 proceedings. (Interve-nor's Mem. at 5.) During oral argument, counsel for OSM stated OSM found there was a deficit in the special reclamation fund, but did not disapprove the fund itself.
 

 This Court relied on OSM's explicit
 
 findings,
 
 underlined for emphasis above, that the
 
 *480
 
 West Virginia alternative bonding system failed to meet the requirements of federal law. The instigation and purpose of Section 1271 actions are discussed
 
 infra
 
 at n. 8.
 

 [8]
 

 . Section 1271(a) provides for the Secretary of the Interior to act when
 
 permittee
 
 violations are occurring at surface coal mining operations and the State regulatory authority, if one exists, fails to act after notice from the Secretary.
 
 See
 
 30 U.S.C. § 1271(a) (emphasis added). Section 1271(b) provides for the Secretary to act when she determines there are violations of the approved State program due to the
 
 Stale’s failure to enforce “all or any part of the State program
 
 effectively.”
 
 Id.
 
 § 1271(b)(emphasis added). Section 1271(c) allows the Secretary to institute through the Attorney General civil actions against
 
 permit-tees
 
 under various circumstances.
 
 Id.
 
 § 1271(c)(emphasis added). That is, Section 1271 provides for federal intervention where the State fails to implement its approved state program.
 

 None of these provisos appears to support the Secretary's takeover of a state program where the program is less stringent than or inconsistent with the federal requirements. Rather, agency disapproval appears to be the operative remedy. Section 1253(c) provides for the Secretary to disapprove any State program "in whole or in part," after which the State has sixty days "to resubmit a revised State program or portion thereof.” 30 U.S.C. § 1253(c). With regard to the West Virginia alternative bonding system, that disapproval has happened.
 
 See
 
 60 Fed.Reg. 51910;
 
 see also
 
 30 C.F.R. § 732; discussion
 
 supra
 
 III.B. Section 1254 (hen provides for promulgation of a federal program where "the State fails to resubmit an acceptable State program within sixty days of disapproval of a proposed State program.” 30 U.S.C. § 1254(a)(2). That ac-lion has not occurred, although Section 1255 preemption would have the same effect.
 

 [9]
 

 . This Court is unable to reconcile (1) Section 1255 preemption, (2) OSM’s explicit finding that the West Virginia alternative bonding system did not meet the objectives of SMCRA, (3)
 
 partial
 
 disapproval of state programs by OSM under Section 1253,
 
 see supra
 
 n. 8, (4) Section 1271 provisions,
 
 see supra
 
 n. 8, and (5)
 
 Molinary, see supra
 
 n. 4, with our Court of Appeals' account of SMCRA cooperative federalism. Nevertheless, as a faithful servant of the law, the undersigned must apply strictly the law as proclaimed by the superior tribunal.