**THE WEST VIRGINIA HIGHLANDS CONSERVANCY, Plaintiff,**

v.

**Gale A. NORTON, Secretary of the Department of the Interior, and Glenda Owens, Acting Director of the Office of Surface Mining, Defendants, and**

**West Virginia Coal Association, Intervenor–Defendant.**

**No. CIV. A. 2:00–1062.**

United States District Court, S.D. West Virginia, Charleston Division.

Aug. 31, 2001.

Joseph M. Lovett, Charleston, WV, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, Patrick C. McGinley, Suzanne M. Weise, Morgantown, WV, for Plaintiff.

Charles T. Miller, Michael L. Keller, United States Attorney's Office, Charleston, WV, Ruth Ann Storey, John Cruden, U.S. Department of Justice, Environment & Natural Resources Div., General Litigation Section, Washington, DC, for Defendants Secretary Norton and Director Owens.

Robert G. McLusky, James R. Snyder, Jackson & Kelly, Charleston, WV, for Intervenor–Defendant West Virginia Coal Association.

### *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending are 1) Plaintiff's motion for partial summary judgment and a permanent injunction on *Counts* One, Two, and/or Three and 2) Defendants Norton and Ow-

ens' (Federal Defendants') motion to dismiss. For reasons discussed below, the Federal Defendants' motion is **DENIED**, Plaintiff's motion for partial summary judgment on *Counts* Two and Three is **GRANTED**, and the remaining motions are **DENIED** as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff West Virginia Highlands Conservancy (Conservancy) brought this civil action under the citizen suit provision of the Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. § 1270(a)(2). The Complaint alleged the state alternative bonding program for surface mine reclamation bonds was inadequate to meet the minimum requirements of SMCRA. Further, it alleged that in 1991, and again in 1995, the Office of Surface Mining (OSM) found the state program did not meet the objectives and purposes of federal law. At both times OSM ordered the State to bring the program into compliance, but as of 2000 the State had failed to do so. Instead, the State Division of Environmental Protection (DEP) continued to approve surface mining permits although the State's program, which combined site specific bonds with a special reclamation fund, demonstrably was inadequate for the State to reclaim the land and treat water should the bonds be forfeited.

In March 2001 the Court dismissed the State DEP Secretary from this action based on an Eleventh Amendment bar. *See West Virginia Highlands Conservancy v. Norton,* 147 F.Supp.2d 474 (S.D.W.Va. 2001). Prior to his dismissal, DEP Secretary Callaghan testified in the preliminary injunction hearing the West Virginia alternative bonding system did not meet the requirements of federal law because the funding was "totally inadequate." *Id.* at 476. The Secretary also testified the State surface mine bond reclamation program was "less stringent than and inconsistent with SMCRA." *Id.* at 477.

On June 19, 2001 Plaintiff moved for partial summary judgment and a permanent injunction against the Federal Defendants declaring they had unreasonably delayed mandatory enforcement action and ordering them either 1) to implement a federal surface mining program for West Virginia, or 2) to withdraw approval of the State program and initiate proceedings under 30 C.F.R. part 736 (Part 736), or 3) to initiate and carry out proceedings pursuant to 30 C.F.R. part 733 (Part 733). In response, on June 29, 2001 the Federal Defendants moved to dismiss, citing a letter of the same date from Defendant Owens to Secretary Callaghan instituting Part 733 proceedings "because West Virginia has failed to maintain the adequacy of its alternative bonding system." (Federal Defs.' Mot. to Dismiss, Ex. 1.) The Federal Defendants argue Plaintiff's claims against them are mooted by initiation of the administrative corrective process and should be dismissed, pursuant to *Rule* 12(b)(6). Fed.R.Civ.P. 12(b)(6). The Court first considers Defendants' motion to dismiss and, second, Plaintiff's motions for partial summary judgment and a permanent injunction.

## II. DISCUSSION

### A. *Federal Defendants' Motion to Dismiss as Moot*

A motion under *Rule* 12(b)(6) serves "to test the formal sufficiency of the state of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (2d ed.1990). Because such motions test the sufficiency of the pleadings, the Court's Scheduling Order set a fairly early deadline of Febru-

ary 16, 2001, by which standard this motion filing, clearly, was unseasonable. Acknowledging this problem, the Federal Defendants respond that a jurisdictional defense such as that raised by the motion to dismiss may be raised at any time during the litigation. (Federal Defs.' Reply Mem. in Supp. of Their Mot. to Dismiss at n. 1.) The Court agrees and reframes the question as one of the Court's jurisdiction under *Rule* 12(b)(1). Fed.R.Civ.P. 12(b)(1).

■■■■ A mootness determination is ultimately grounded in Article III considerations, particularly the "case or controversy" requirement, because courts are not empowered to decide moot cases, and decision of moot matters should not be made when it would be merely advisory. *See* 13A *Federal Practice and Procedure* § 3533.1. A claim is moot if it has lost its character as a present, live controversy. *American Tunaboat Ass'n v. Brown,* 67 F.3d 1404, 1407 (9th Cir.1995). Action by a defendant that simply accords all the relief demanded by the plaintiff may moot an action. *See* 13A *Federal Practice and Procedure* § 3533.2. If nothing further would be ordered by the court, there is no point in proceeding to decide the merits. *Id.* The Federal Defendants argue OSM's initiation of Part 733 proceedings moots the relief Plaintiff requests, and moots the argument the agency has unreasonably delayed this action.[1] On this basis, they urge the Court lacks jurisdiction and must dismiss this action.

The gravamen of Plaintiff's complaint is that West Virginia's alternative reclamation bonding system violates federal law. SMCRA requires, "The amount of the [reclamation] bond shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture[.]" 30 U.S.C. § 1259(a). The Secretary of the Interior "may approve as part of a State or Federal program an alternative system that will achieve the objectives and purposes of the bonding program pursuant to this section." 30 U.S.C. § 1259(c). The West Virginia alternative bonding system was approved by OSM in 1983.

Since at least 1991, however, OSM has known officially that the West Virginia reclamation bonding program failed (and today continues to fail) to satisfy the federal statutory requirement for adequate funding. As the Court previously recounted:

> [In 1995] OSM reported ... that "[o]n October 1, 1991 ... OSM notified West Virginia in accordance with 30 C.F.R. § 732.17 that its regulatory program no longer met all Federal requirements." [60 Fed Reg. 51909.] The federal agency's annual reviews since 1989 showed the State alternative bonding system's liabilities exceeded assets and, by 1994, the deficit was twenty-two million two hundred thousand dollars ($22,200,000). *Id.* While approving the proposed increases in the West Virginia site specific bond cap and the per-ton tax rate, OSM found these increases "still insufficient to ensure complete reclamation, including treatment of polluted water." *Id.* at 51910. OSM concluded:

>> Therefore, the [OSM] Director finds that West Virginia's alternative bonding system no longer meets the requirements of 30 CFR § 800.11(e). Furthermore, it is not achieving the objectives and purposes of the conventional bonding program set forth in section 509 [30 U.S.C. § 1259] of SMCRA since the amount of bond and

---

1. *See* discussion *infra* at II.B.3.

other guarantees under the West Virginia program are not sufficient to assure the completion of reclamation. Hence, the Director is requiring West Virginia to eliminate the deficit in the State's alternative bonding system and to ensure that sufficient funds will be available to complete reclamation, including the treatment of polluted water, at all existing and future bond forfeiture sites.

*Conservancy,* 147 F.Supp.2d at 479 (citations omitted).

Part 733 proceedings are one administrative route to remedy Plaintiff's complaint and bring West Virginia's surface mining reclamation bonding system into compliance with federal law. Under part 733, if the State fails to remedy the cited deficiency, the OSM Director shall either 1) substitute federal for state enforcement of all or part of the State program or 2) recommend the Secretary of the Interior withdraw approval of all or part of the State program, leading to federal enforcement and potential promulgation of a federal program for the State. *See* 30 C.F.R. §§ 733.12(e), (f), (g). Part 733 is a means to an end, not an end in itself.

The injury of which Plaintiff complains is the inadequate state bonding program, which is less stringent than and inconsistent with federal law, and concomitantly, OSM's failure to compel West Virginia authorities to remedy the problem. The fund's inadequacy for more than a decade has caused further injuries: unreclaimed mine sites, polluted state streams, and "an immense state liability, incurred by the mine operators, but borne by the taxpayers." *Conservancy,* 147 F.Supp.2d at 481. OSM has now taken one tentative step toward a remedy, but Plaintiff's injury continues unless and until 1) West Virginia implements a state reclamation bonding system sufficient to satisfy SMCRA §§ 1259(a) and 30 C.F.R. § 800.11,[2] or 2) OSM Director Owens substitutes federal enforcement, or 3) Secretary Norton withdraws approval of the State program in whole or part and substitutes federal enforcement or promulgates a federal program. Director Owens *began* the process with her letter of June 29, 2001. The conclusion of the process, a remedy for Plaintiff's alleged wrong, lies somewhere in the distant future.

Accordingly, the Court **DENIES** the Federal Defendants' motion to dismiss this action as moot because it presents a live, continuing controversy. As discussed below, however, Plaintiff's request for initiation of Part 733 proceedings *is* mooted by Director Owens' letter of June 29, 2001 initiating the process.

### B. Plaintiff's Motion for Partial Summary Judgment on Counts 1, 2, and 3

*Count* 1 alleges the Federal Defendants' failures to perform nondiscretionary duties under SMCRA, 30 U.S.C. § 1254(a)(3) to "prepare ... promulgate and implement a Federal program for a State ... if such State ... fails to implement, enforce or maintain its approved State surface mining

---

2. And reclaims the land, builds water treatment facilities and treats the polluted water discharges, which comprise the growing backlog for which no funds have been available. OSM's most recent account shows 15,356 acres unreclaimed. (Pl.'s Mot. for Partial Summ. J., Ex. 21.) The State DEP Secretary testified that, of eighty-eight (88) unreclaimed sites with water treatment problems, the Division was able to afford treatment for five. (*Id.,* Ex. 1 at 14.) OSM's own figures show the necessity to recover approximately $24 million for annual water treatment and $76 million for capital costs for currently active mining sites treating mine drainage pollution. (Federal Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 12.)

program as provided for in this Act." Alternatively, *Count* 2 alleges the Federal Defendants failed to perform non-discretionary duties to initiate and carry out proceedings under 30 C.F.R. part 733. *Count* 3 alleges the Federal Defendants unlawfully withheld and unreasonably delayed performing their mandatory duties alleged in *Counts* 1 and 2, in violation of the Administrative Procedure Act (APA).[3] The Court considers *Count* 2 first, then *Count* 3. Because it determines *Count* 2 applicable, the alternative remedy proposed by *Count* 1 is denied as moot.

### 1. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

### 2. *Count* 2

■ Plaintiff moved for summary judgment on its claim that the Federal Defendants unlawfully withheld and unreasonably delayed performing nondiscretionary duties. Based on findings pursuant to Part 732 and the State's failure to respond, Plaintiff claims Director Owens had a non-discretionary duty to undertake Part 733 proceedings. Defendants argue any claim for unreasonable delay action was mooted by the June 29, 2001 letter initiating Part 733 proceedings.

---

**3.** The APA provides a temporal reasonableness deadline in two separate provisions. In 5 U.S.C. § 555(b), Congress provided that agencies must discharge their statutory duties "within a reasonable time"; correspondingly, Congress provided in 5 U.S.C. § 706(1) that courts "shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555, 706(1).

**4.** The regulation requires an approved alternative bonding system to achieve objectives and purposes of the bonding program:

The administrative regulations under Part 732 provide:

> (e) State program amendments may be required when—
>
> . . .
>
> (3) Conditions or events indicate that the approved State program no longer meets the requirements of the Act or this chapter.

30 C.F.R. § 732.17(e)(3). As previously noted, in 1991 and again in 1995, OSM provided notice the State ABS did not meet the objectives and purposes of SMCRA, particularly 30 U.S.C. § 1259(a) and 30 C.F.R. § 800.11(e).

In 1991 OSM made a finding "pursuant to 30 C.F.R. § 732.17" that "its regulatory program no longer met all Federal requirements" because of the deficit in the ABS. In 1995 OSM found:

> West Virginia's alternative bonding system no longer meets the requirements of 30 CFR 800.11(e).[4] Furthermore, it is not achieving the objectives and purposes of the conventional bonding program set forth in section 509 [30 U.S.C. § 1259] of SMCRA since the amount of bond and other guarantees under the West Virginia program are not sufficient to assure the completion of reclamation.

60 Fed.Reg. 51910. OSM now characterizes the 1995 action as "a *finding* pursuant to 30 C.F.R. § 732.17(e)(3)". (Federal

> (1) The alternative must assure that the regulatory authority will have available sufficient money to complete the reclamation plan for any areas which may be in default at anytime; and
> (2) The alternative must provide a substantial economic incentive for the permittee to comply with all reclamation provisions.

30 C.F.R. § 800.11(e); *see also* 30 U.S.C. §§ 1259(a),(c).

Defs.' Reply Mem. in Supp. of Mot. to Dismiss at 5.)

The Section 732 regulations next provide:

> (f)(1) If the Director determines that a State program amendment is required, the State regulatory authority shall, within 60 days after notification submit to the Director either a proposed written amendment or a description of an amendment ... and a timetable for enactment[.]

30 C.F.R. § 732.17(f)(1). In October 1991, OSM informed the West Virginia Commissioner of Energy an amendment was required to make the State ABS conform to the objectives and purposes of "the otherwise mandatory conventional bonding program." (*See* Pl.'s Mot. for Partial Summ. J., Ex. 8.) The State did nothing and OSM did nothing.

In 1995, the OSM Director determined a program amendment was required and provided notice in the Federal Register. At that time OSM required, *inter alia,* the State propose an amendment "to eliminate the deficit in the State's alternative bonding system and to ensure that sufficient money will be available to complete reclamation, including the treatment of polluted water, at all existing and future bond forfeiture sites." 30 C.F.R. § 948.16(111); 60 Fed.Reg. at 51918. The State did nothing and OSM did nothing.

The Section 732 regulations next provide:

> (2) If the State regulatory authority does not submit the proposed amendment or description and the timetable for enactment within 60 days from the receipt of the notice, or does not subsequently comply with the submitted timetable, or if the amendment is not approved under this Section, *the Director shall begin proceedings under 30 C.F.R. part 733* to either enforce that part of the State program affected or withdraw approval, in whole or in part of the State program and implement a Federal program.[5]

30 C.F.R. § 732.17(f)(2). Again, OSM did nothing, nothing in 1991 and nothing in 1995.

This mandatory duty[6] to begin Part 733 proceedings was triggered first by the State's inaction in December 1991, and again in December 1995. Only on June 29, 2001, the date the Federal Defendants' brief was due in response to Plaintiff's motion for a permanent injunction ordering them to initiate these proceedings, did OSM Director Owens commence the 733 process with a letter to the State. Thus, almost ten years had passed before the impetus of this litigation finally led the Director to initiate the necessary corrective process.

The Federal Defendants do not dispute the factual bases of this discussion, nor the applicability of the regulations cited. Accordingly, the Court **GRANTS** partial summary judgment on *Count* 2, because the OSM Director was under a mandatory duty to initiate proceedings under Part 733

---

5. Enforcement of a State program would be appropriate when the State failed to enforce its own program; enforcement of an inadequate State program would be unavailing. Thus, the alternative remedy, to withdraw approval, is the correct one in the instant situation.

6. When a statute or regulation uses the word "shall," a mandatory duty is imposed upon the subject of the command. *See e.g. United States v. Monsanto,* 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989)(by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied.").

to withdraw approval of the State alternative reclamation bonding system.[7]

### 3. *Count 3*

Because the 733 process has begun, although litigation-inspired and however belatedly, the Federal Defendants argue any claim of unreasonable delay is moot. As previously discussed, however, the initiation of the process does not ensure the completion of the ultimate agency action Plaintiff seeks, nor does it relieve and resolve the historical wrongs of which Plaintiff complains. Consequently, the Court yet may inquire whether OSM's delay was unreasonable.

In evaluating unreasonable delay claims, courts consider four factors:

> First, "the court should ascertain the length of time that has elapsed since the agency came under a duty to act." . . . Second, "reasonableness of the delay must be judged 'in the context of the statute' which authorizes the agency's action." . . . Third, the court must examine the consequences of the agency's delay. . . . Finally, the court should give due consideration in the balance to "any plea of administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."

*In re International Chemical Workers Union*, 958 F.2d 1144, 1149 (D.C.Cir.1992) (citations omitted).

■ The regulations allow sixty days for a state to propose a remedy and thirty days for OSM to respond to a state's failure. Almost a decade has elapsed since

OSM came under a duty to *begin* 733 proceedings, an extraordinary delay.

Considering the next factor, the first purpose of SMCRA is to "establish a *nationwide* program to protect society and the environment from the adverse effects of surface coal mining operations[.]" 30 U.S.C. § 1202(a) (emphasis added). An additional purpose is to "assist the States in developing and implementing a program to achieve the purposes of this chapter." 30 U.S.C. § 1202(g). State surface mining programs may not be approved unless they provide "for the regulation of surface coal mining and reclamation operations in accordance with the requirements of this chapter." 30 U.S.C. § 1253(a). Where the Secretary disapproves any proposed State program in whole or in part, the statute provides sixty days for the State to resubmit a revised State program or portion thereof, and sixty days for the Secretary to approve or disapprove the State's submission. 30 U.S.C. § 1253(c). State laws inconsistent with SMCRA are superseded by federal law, unless they provide for more stringent land use and environmental controls and regulations of surface mining. *See* 30 U.S.C. § 1255.

Clearly, Congress intended federal law to provide minimum national requirements for surface mining. States may regulate their own programs so long as they are consistent with federal law. But where a state program is inconsistent, it may not be approved, and the statutory timelines for both the State and the Secretary to achieve State compliance are short: 60 days apiece.

Under the third factor, the direct consequences of the agency's decade-long delay have been examined here before: thou-

---

**7.** *Counts* 1 and 2 provide alternative enforcement methods, both leading ultimately to promulgation of a federal reclamation bonding program. Accordingly, having found the Di- rector had a mandatory duty under *Count 2*, Plaintiff's motion for partial summary judgment on *Count 1* is **DENIED** as moot.

684

sands of acres of unreclaimed strip-mined land, untreated polluted water, and millions (potentially billions) of dollars of State liabilities. The indirect results, however, may be more damaging: a climate of lawlessness, which creates a pervasive impression that continued disregard for federal law and statutory requirements goes unpunished, or possibly unnoticed. Agency warnings have no more effect than a wink and a nod, a deadline is just an arbitrary date on the calendar and, once passed, not to be mentioned again. Financial benefits accrue to the owners and operators who were not required to incur the statutory burden and costs attendant to surface mining; political benefits accrue to the state executive and legislators who escape accountability while the mining industry gets a free pass. Why should the state actors do otherwise when the federal regulatory enforcers' findings, requirements, and warnings remain toothless and without effect?

SMCRA was passed, in part, to address known results of unregulated surface mining:

> disturbances of surface areas that burden and adversely affect commerce and the public welfare by destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural, and forestry purposes, by causing erosion and landslides, by contributing to floods, by polluting the water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property by degrading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water, and other natural resources.

30 U.S.C. § 1201(c). With mandated reclamation plans and reclamation bonds re-

quired by federal law to be adequate, SMCRA was a promise to remedy the abuses, protect the environment, and yet permit the recovery of mineral reserves with approved practices and regulatory oversight.

The final factor to consider is any pleas of the agency, claiming error, convenience, practical difficulty, or prioritization of limited resources. OSM has pled none, except the oft-repeated excuse that this is a difficult issue and time is needed. At the eleventh hour, OSM argues it wrote the 733 letter and thus no delay occurred. After a decade, the excuse does not suffice.

Accordingly, the Court FINDS and CONCLUDES the Director of OSM unreasonably delayed performing her mandatory duty to enforce federal reclamation bonding standards by failing to undertake Part 733 proceedings in a reasonable time after the State's noncompliance was officially noticed and documented.

### 4. Permanent Injunction or Other Remedy

 Plaintiff moved for a permanent injunction essentially foreshortening Part 733 proceedings to produce either substituted federal enforcement or withdrawal of federal approval and promulgation of a federal program within 75 days of the Court's granting of partial summary judgment. In response to the Federal Defendants' letter instituting 733 proceedings, Plaintiff objects that the process proposed is open-ended and prone to additional unreasonable delay. Defendants respond that OSM's 733 notice conforms to all time frame requirements of the regulations and these Defendants should be allowed to carry out the process unimpeded. For reasons that follow, the motion for permanent injunctive relief will be denied without prejudice.

Director Owens' letter of June 29, 2001 proposes the State must:

— submit to the West Virginia Legislative Rulemaking Review Committee by July 27, 2001, the regulatory initiatives you propose to address these [alternative bonding system] problems;

— simultaneously submit a copy of these regulatory initiatives and any necessary statutory proposals to OSM's Charleston Field Office, along with a timetable for enactment; and

— within 45 days after the close of the 2002 legislative session, provide the Charleston Field Office with final enacted legislation signed by the Governor that fully resolves all outstanding problems with the ABS.

Additionally, the DEP had until August 13, 2001 to request an informal conference.[8]

Section 733 provides:

(b) If the Director has reason to believe that a State is not effectively implementing, administering, maintaining or enforcing any part of its approved State program, the Director shall promptly notify the State regulatory authority in writing. The Director's notice shall—

. . . .

(3) Specify the time period for the State regulatory authority to accomplish any necessary remedial actions.

30 C.F.R. § 733.12(b).

Defendants note the 733 letter provides a time period that ends 45 days after the 2002 West Virginia legislative session. They argue that because legislative action is necessary, and cannot be compelled by the agency or the Court, the time frame is reasonable and one comporting with democratic processes. The Court agrees the timeline proposals are reasonable and the Governor and Legislature of West Virginia must be given opportunity to respond.

The Court intends to ensure the deadlines set in Director Owens' June 29, 2001 letter are honored and that concomitant duties under Parts 733 and 736,[9] which may arise upon failure of the State to act, will be undertaken immediately and resolved seasonably. Additionally, while the Court does not intend to substitute its limited wisdom for that of the agency, any potential solution to the problems identified with the State alternative reclamation bonding system will be measured against the failures documented in the record so the Court may assure itself appropriate relief is available when legislative and administrative processes are exhausted or found futile. Accordingly, the Court **ORDERS** as follows:

1. The parties may continue discovery as Plaintiff requests;

2. The parties shall provide reports every six weeks to the Court concerning progress toward meeting OSM's deadlines;

3. Proposed statutory amendments to satisfy deficiencies in the reclamation bonding system shall be made available to the Court when presented to OSM;

4. The entry of a final scheduling order will be deferred until the earlier of 1) presentation to OSM of final enacted legislation approved by the Governor or 2) 45 days after the close of the 2002 State legislative session.

**8.** The Court does not know whether such a request was made. As of August 9, 2001, it had not been. (*See* W. Va. Coal Ass'n's Resp. to Pl.'s Request to Take Judicial Notice, Ex. 1.)

**9.** Section 736 provides for "promulgation, implementation, maintenance, administration, revision and termination of a Federal program for a State for . . . surface coal mining and reclamation operations[.]" 30 C.F.R. § 736.1.

686

## III. CONCLUSION

The Federal Defendants' motion to dismiss is **DENIED**. Plaintiff's motion for partial summary judgment on *Counts* 2 and 3 is **GRANTED.** Plaintiff's motion for partial summary judgment on *Count* 1 is **DENIED** as moot. Plaintiff's motion for a permanent injunction is **DENIED** without prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record by facsimile transmission and first class mail and publish it on the Court's website at http://www.wvsd.uscourts.gov.