The **WEST VIRGINIA HIGHLANDS CONSERVANCY, Plaintiff,**

v.

Gale A. **NORTON, Secretary of the Department of the Interior, and Jeffrey**

D. Jarrett,[1] Director of the Office of Surface Mining; Defendants,

and

**West Virginia Coal Association, Intervenor–Defendant.**

No. Civ.A. 2:00–1062.

United States District Court, S.D. West Virginia, Charleston Division.

March 18, 2002.

the relevant facts, supported by affidavits and a copy of the sales contract.

1. Pursuant to *Rule* 25(d)(1), Jeffrey D. Jarrett, as successor to Glenda Owens, former Acting Director of the Office of Surface Mining, is substituted as the proper party to this action.

John W. Barrett, Appalachian Center for the Economy and the Environment, Charleston Office, Charleston, WV, Joseph M. Lovett, Appalachian Center for the Economy and the Environment, Lewisburg, WV, Patrick C. McGinley, Morgantown, WV, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, Suzanne M. Weise, Morgantown, WV, for plaintiffs.

Kasey Warner, United States Attorney, Michael L. Keller, United States Attorney's Office, Charleston, WV, Ruth Ann Storey, John Cruden, U.S. Department of Justice, Environment & Natural Resources Div., General Litigation Section, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Plaintiff's motions for (1) leave to file an amended and supplemental complaint, (2) injunctive relief on *Count* 8 of the Amended and Supplemental Complaint, (3) partial summary judgment and a permanent injunction on *Counts* 2 and 3, and (4) further injunctive relief on *Count* 3. Intervenor Defendant West Virginia Coal Association's (WVCA's) motion to dis-

miss also pends. For reasons discussed below, Plaintiff's motion to file an amended and supplemental complaint is **GRANTED**. All other motions are **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff West Virginia Highlands Conservancy ("Conservancy") brought this civil action under the citizen suit provision of the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270(a)(2), as well as the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 and 706(1). The Complaint alleged failure of the Secretary of the West Virginia Department of Environmental Protection ("WVDEP") to implement, maintain, and enforce its approved state surface mining program.[2] The Conservancy further alleged the failures of the Secretary of the Department of the Interior and the Director of the Office of Surface Mining ("OSM") (together "Federal Defendants") to promulgate and implement a federal surface mining program for West Virginia following the State's failure.

In particular, the Conservancy alleged the state alternative bonding system ("ABS") for surface mine reclamation bonds was inadequate to meet the minimum requirements of SMCRA. Prior to his dismissal from this action, WVDEP Secretary Michael O. Callaghan testified in the preliminary injunction hearing the West Virginia ABS did not meet the requirements of federal law because the funding was totally inadequate. *West Virginia Highlands Conservancy, Inc. v. Norton ("Conservancy I")*, 147 F.Supp.2d 474, 476 (S.D.W.Va.2001). The Secretary also testified the State surface mine bond reclamation program was "less stringent than and inconsistent with SMCRA." *Id.* at 477.

In June 2001 the Conservancy moved for partial summary judgment and a permanent injunction against the Federal Defendants declaring they had unreasonably delayed mandatory enforcement action concerning the ABS and ordering them either 1) to implement a federal surface mining program for West Virginia or 2) to withdraw approval of the State program and initiate proceedings under 30 C.F.R. Part 733 or Part 736. *See The West Virginia Highlands Conservancy v. Norton ("Conservancy II")*, 161 F.Supp.2d 676, 678 (S.D.W.Va.2001). On June 29, 2001, the date the Federal Defendants' response to the motion was due, OSM initiated Part 733 proceedings "because West Virginia has failed to maintain the adequacy of its alternative bonding system." *Id.* On that basis, the Federal Defendants moved to dismiss the claims concerning ABS enforcement as moot.

The Court found, however, that institution of Part 733 proceedings did not moot the Conservancy's claims:

> The injury of which Plaintiff complains is the inadequate state bonding program, which is less stringent than and inconsistent with federal law, and concomitantly, OSM's failure to compel West Virginia authorities to remedy the problem. The fund's inadequacy for more than a decade has caused further injuries: unreclaimed mine sites, polluted state streams, and "an immense state liability, incurred by the mine operators, but borne by the taxpayers." OSM has now taken one tentative step toward a remedy.... The conclusion of the process, a remedy for Plaintiff's alleged

> *Virginia Highlands Conservancy v. Norton,* 147 F.Supp.2d 474 (S.D.W.Va.2001).

---

**2.** In March 2001 the Court dismissed the State WVDEP Secretary as a defendant based on an Eleventh Amendment bar. *See West*

wrong, lies somewhere in the distant future.

*Id.* at 680.

The Court held OSM's ten-year delay between its determination of the State ABS's inadequacy and initiation of administrative proceedings to withdraw program approval was unreasonable, in violation both of SMCRA and the APA. *Id.* at 684. However, the Court declined to issue a permanent injunction foreshortening OSM's proposed Part 733 proceedings schedule. OSM's Part 733 letter required WVDEP to provide the Charleston Field Office with final enacted legislation signed by the Governor that fully resolves all outstanding problems with the ABS within 45 days after the close of the 2002 West Virginia legislative session, a timeline the Court found reasonable.[3] *Conservancy II*, 161 F.Supp.2d at 685.

After that Order was entered, the State legislature met in special session to pass a bill, which was signed by the Governor, increasing the tax for the ABS.[4] The legislation, dubbed the "7–Up Plan," increased the tonnage tax on clean coal mined from three cents to seven cents per ton, a permanent change. For a period not to exceed thirty-nine (39) months, an additional seven cents per ton of clean coal mined will be levied. The permanent tax increase "may not be reduced until the special reclamation fund has sufficient moneys to meet the reclamation responsibilities of the state established in this section." W.Va. Code § 22–3–11(h)(2) (2002). The legislation also created an advisory council to study the "effectiveness, efficiency, and financial stability" of the SRF and report annually to the Legislature and the Governor whether any adjustments to the SRF tax should be made. W.Va.Code § 22–1–17.

WVDEP submitted the legislation to OSM as a program amendment on September 24, 2001. 66 Fed.Reg. 67447 (Dec. 28, 2001). OSM announced receipt of the proposed amendment on October 24, 2001 and accepted public comments on the proposal until November 23, 2001. OSM denied the Conservancy's request for a three-week extension of the comment period, because a delay in approval could result in a loss of badly needed revenues.[5]

---

3. The regular 2002 legislative session ended March 9, 2002. Forty-five days later is April 23, 2002.

4. The State ABS is a two-part system comprised of site-specific bonds, capped at five thousand dollars ($5000.00) per acre, and a special reclamation fund ("SRF"), which is funded by a tax on tons of clean coal mined by all operators, forfeited bonds, civil penalty collections, and interest.

5. The ABS Act provided, "to the extent that this section modifies any powers, duties, functions and responsibilities of the [WVDEP] that may require approval of one or more federal agencies or officials ... the modifications will become effective upon the approval of the modifications by the appropriate federal agency or official." W.Va.Code § 22–3–11(n). OSM relied on this provision in determining, "Because [the West Virginia] tax rate increase cannot take effect without our approval, we believe that delaying a decision on these funding enhancements until we decide the broader question of whether the amendment fully satisfies [the statutory requirements] would be counterproductive." 66 Fed.Reg. 67448 (Dec. 28, 2001).

The Conservancy argues the portion of the bill enacting the tax rate increase is directed to the State tax commissioner and does not modify WVDEP powers, duties, *et cetera*. Thus, according to the Conservancy, OSM did not need to approve the amendment just to implement the tax increase; the tax rate increase would have taken effect without OSM approval.

Because the Court finds the OSM timetable and two-step approval plan is not unreasonable, it need not determine whether this portion of OSM's rationale is correct and its reading of the state statute is accurate. In any case, judicial determination of the correct interpretation of the statute potentially could have further delayed the State's receipt of the increased revenue.

However, "because of the complexity and the volume of material related to questions about how the amendment will affect the West Virginia program," OSM agreed with the Conservancy that "additional time is needed by all interested parties to assess the effect of the amendment." 66 Fed. Reg. 67452. Relying on an internal OSM directive that allows approval of a proposed state ABS amendment that does not fully remedy all deficiencies so long as it does not adversely affect ABS solvency, OSM approved the West Virginia amendment, but deferred the question whether the amendment would eliminate the ABS deficit and "ensure that sufficient money will be available to complete reclamation, including the treatment of polluted water, at all existing and future bond forfeiture sites." *See* 66 Fed.Reg. 67451 (citing 30 C.F.R. § 948.16(*lll*)).

A comment period only on the solvency issue was reopened until March 28, 2002. In a sworn declaration accompanying the Federal Defendants' response to the Conservancy's motion for summary judgment, Glenda Owens, Acting Director of OSM, averred: "No later than May 28, 2002, sixty days after the close of the comment period, OSM will determine whether the 7–Up Plan fully satisfies the required amendment at 30 C.F.R. § 948.16(*lll*) and is consistent with the requirements of SMCRA and 30 C.F.R. § 800.11(e)." (Fed.Defs.' Mem. in Opp'n to Pl.'s Mot .... for Summ.J. and Inj. Relief, Ex. 1 ¶ 4.) Additionally, Owens promised: "In the event the 7–Up Plan does not fully satisfy the [required] amendment at § 948.16(*lll*), OSM will immediately proceed to take action on the West Virginia ABS under the provisions of 30 C.F.R. Part 733." (*Id.* ¶ 5.)

Following OSM's institution of the bifurcated approval process for the 7–Up Plan program amendment, the Conservancy moved to amend its Complaint to add Count 8 seeking judicial review of OSM's decision approving the amendment without determining if it was consistent with SMCRA and regulations promulgated thereunder. It then moved for summary judgment on *Count* 8 and, if the Court found OSM's initial approval to be arbitrary and capricious, to set a timetable for OSM to carry out its Part 733 duties.

In addition to the program amendments relating to the SRF discussed above, the Conservancy's Complaint also alleged WVDEP failed to submit sixteen additional program amendments required by OSM and that OSM had unreasonably delayed action relating to nine other program amendments WVDEP had submitted. The Conservancy seeks partial summary judgment on *Count* 2 that WVDEP failed to submit the required amendments, which triggered OSM's nondiscretionary duty to begin Part 733 takeover proceedings. The Conservancy also seeks partial summary judgment on *Count* 3, that OSM has unreasonably delayed taking the Part 733 actions, and a permanent injunction with a strict timetable compelling OSM to proceed with its mandatory Part 733 duties.

Finally, Intervenor Defendant West Virginia Coal Association ("WVCA") moved to dismiss this action for lack of subject matter jurisdiction because the SMCRA citizen suit provision supports only actions to enforce mandatory duties of the Secretary of the Interior. WVCA argues the Conservancy's complaints concern discretionary activities of the Federal Defendants and therefore lie outside the Court's jurisdiction. WVCA also contends OSM's decision not to undertake enforcement action under Part 733 is presumptively unreviewable under the APA. The Conservancy timely responded to this motion. WVCA filed no reply and the issue is now ripe for disposition.

## II. DISCUSSION

### A. *Motion to Dismiss*

#### 1. *Subject Matter Jurisdiction under SMCRA*

■ The SMCRA citizen suit provision allows actions against the Secretary "where there is alleged a failure ... to perform any act or duty under this chapter which is not discretionary with the Secretary[.]" 30 U.S.C. § 1270(a)(2). According to WVCA, the Conservancy seeks to force the Federal Defendants to substitute direct federal enforcement over surface coal mining operations in West Virginia and to implement a federal program in lieu of the state surface mining program. (Def.–Intervenor's Mot. to Dismiss at 5.) WVCA argues that those decisions under Part 733 are "discretionary judgments of the agency" in undertaking a "consultative and corrective" process, which "imposes no command upon the federal defendants except to exercise their judgment." (*Id.* at 8.)

■ WVCA's argument overlooks Part 732 of Chapter 30 of the Code of Federal Regulations, which the Court parsed rather closely in *Conservancy II*. *See Conservancy II*, 161 F.Supp.2d at 681–82. OSM's duty to commence Part 733 proceedings arises under Part 732. If the Director determines that a State program amendment is required, OSM notifies the State, here WVDEP, which has sixty days to respond. 30 C.F.R. § 732.17(f)(1).

(2) If the State regulatory authority does not submit the proposed amendment or description and the timetable for enactment within 60 days from the receipt of the notice, or does not subsequently comply with the submitted timetable, or if the amendment is not approved under this Section, *the Director shall begin proceedings under 30 C.F.R. part 733 to either enforce that part of the State program affected or withdraw approval, in whole or in part, of the State program and implement a federal program.*

30 C.F.R. § 732.17(f) (emphasis added). When a statute or regulation uses the word "shall," a mandatory duty is imposed upon the subject of the command. *See e.g. United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied.").

Under Section 732.17(f), once the predicate conditions occur, as they did more than a decade ago in the case of the ABS, the Director has a mandatory duty to begin Part 733 proceedings.[6] Because that duty is mandatory, it is enforceable under the SMCRA citizen suit provision, which provides the Court with subject matter jurisdiction. WVCA's motion to dismiss on this ground is **DENIED**.

#### 2. *Reviewability under the APA*

■ Once Part 733 proceedings are begun, WVCA argues, OSM actions are discretionary. Because the APA excepts from judicial review "agency action [that] is committed to agency discretion by law,"

---

**6.** Plaintiff agrees OSM does not have a mandatory duty to choose one option over the other, that is, enforce the State program or withdraw approval and implement a federal program. But the agency does have a mandatory duty to begin Part 733 proceedings leading to one or the other option. (Pl.'s Combined Reply at 11.) Plaintiff also agrees OSM has no mandatory duty to reach any particular decision about whether an amendment complies with federal law. (*Id.* at 12.)

Finally, Plaintiff agrees OSM has no mandatory duty to follow a certain schedule once it begins Part 733 proceedings. (*Id.* at 11.) The Conservancy's requests for strict timetables are not brought under SMCRA, but invoke the APA's prohibition against unreasonable delay of agency action.

5 U.S.C. § 701(a)(2), according to WVCA, OSM enforcement proceedings under Part 733 are not reviewable by the Court.

■■■ Construing this subsection of the APA in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court held that where an agency refuses to take enforcement steps, there is a presumption that judicial review is not available under the APA. *Id.* at 831, 105 S.Ct. 1649. Such decisions are only presumptively unreviewable, however. The presumption may be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33, 105 S.Ct. 1649. Regulations promulgated by an agency under the authority of the general statute also provide sufficient law for a court to apply. *See, e.g., Socop–Gonzalez v. I.N.S.*, 208 F.3d 838, 844 (9th Cir. 2000) (*Heckler* "does not bar judicial review when an agency's regulation provides the Court with law to apply"); *Diebold v. United States*, 947 F.2d 787, 810 (6th Cir. 1991) (statute and regulations provide "detailed standards"); *Massachusetts Public Interest Research Group, Inc. v. United States Nuclear Regulatory Comm'n*, 852 F.2d 9, 16 (1st Cir.1988) ("[A]gency regulations may provide a standard to apply within the meaning of [*Heckler*]"); *Chong v. Director, United States Information Agency*, 821 F.2d 171, 176 (3d Cir.1987) ("We hold ... that these regulations provide sufficient guidance to make possible judicial review under an abuse of discretion standard.").

Part 733 regulates "Maintenance of State Programs and Procedures for Substituting Federal Enforcement of State Programs and Withdrawing Approval of State Programs." 30 C.F.R. part 733. The regulations under Sections 733.12 and .13 provide detailed procedures and standards for withdrawing approval of state programs and substituting federal enforcement. SMCRA authorizes these regulations: If a State "fails to implement, enforce, or maintain its approved State program as provided for in this chapter," then the Secretary "shall prepare, ... promulgate and implement a Federal program for a State." 30 U.S.C. § 1254(a). Both statute and regulations provide law to apply, enabling judicial review.

Importantly, Part 733 is what might be called a "meta-enforcement action." It does not enforce SMCRA *simpliciter*, but decides which entity, state or federal, will have primacy, i.e., which will be the enforcer. As noted in a parallel situation, "That kind of federal/state allocation of enforcement authority is somewhat different from the typical enforcement context in which *Chaney* originated or is customarily applied." *National Wildlife Federation v. United States Environmental Protection Agency*, 980 F.2d 765, 773 n. 3 (D.C.Cir. 1992) (finding reviewability of primacy under Safe Drinking Water Act and noting *Chaney's* reliance on analogy to prosecutorial discretion as basis for unreviewability presumption).

■■■ The Court concludes SMCRA and regulations promulgated thereunder provide both procedural and substantive guidelines for OSM to exercise its discretion under Part 733 and a legal basis for the Court to review that agency activity. WVCA's motion to dismiss on the ground of unreviewability is **DENIED.**[7]

---

**7.** WVCA's argument the Court should abstain under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is incorrect because this action presents issues of federal, not state law. Plaintiff alleges violations by the Federal Defendants of federal law, which provides federal oversight authority to assure state programs comply with SMCRA. After a state program is approved, SMCRA's "structural provisions creating the facility through which the State can attain and can lose its primacy status remain directly operative." *Bragg v. West Virginia Coal*

## B. Motion to Amend Complaint

The Conservancy moved to amend and supplement its Complaint to make certain technical revisions reflecting, for example, changes in official parties and the dismissal of the WVDEP Secretary, and to add *Count* 8. No party opposed the amendments.

At this point in the action's development, "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Accordingly, the Court **GRANTS** the motion and **DIRECTS** the Clerk to file the Amended and Supplemental Complaint.

## C. Summary Judgment and Injunctive Relief on Count 8

*Count* 8 alleges OSM's December 28, 2001 decision to approve WVDEP's proposed amendment because it improves the financial condition of the ABS, without deciding whether it satisfies SMCRA and its implementing regulations is arbitrary, capricious, and otherwise inconsistent with SMCRA, its implementing regulations and the APA. (Am. and Supp.Compl. ¶¶ 76, 77.) Additionally, *Count* 8 alleges OSM's failure in its December 28, 2001 decision to respond to Plaintiff's public comments was also arbitrary, capricious and otherwise inconsistent with the APA. (*Id.* ¶ 78.)

Summary judgment on this count is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

SMCRA requires the amount available through an ABS "shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by

the regulatory authority in the event of forfeiture." 30 U.S.C. § 1259(a); *see also* 30 U.S.C. § 1259(c). Following the statute, the regulations require:

(e) OSM may approve, as part of a State or Federal program, an alternative bonding system, if it will achieve the following objectives and purposes of the bonding program:

(1) The alternative must assure that the regulatory authority will have available sufficient money to complete the reclamation plan for any areas which may be in default at any time; and

(2) The alternative must provide a substantial economic incentive for the permittee to comply with all reclamation provisions.

30 C.F.R. § 800.11(e). On this basis, OSM initially required that:

By December 1, 1995, West Virginia must submit either a proposed amendment or a description of an amendment to be proposed, together with a timetable for adoption, to eliminate the deficit in the State's alternative bonding system and to ensure that sufficient money will be available to complete reclamation, including the treatment of polluted water, at all existing and future bond forfeiture sites.

30 C.F.R. § 948.16(*lll*).

■ The Conservancy argues OSM should not have partially approved the State's 7-Up Plan amendment, submitted in response to this requirement. According to Plaintiff, 30 C.F.R. Section 732.17, which regulates state program amendments, allows either approval or disapproval, but no half-way measures. The Conservancy contends OSM cannot approve the amendment without considering

---

*Ass'n*, 248 F.3d 275, 295 (4th Cir.2001). It is those federal structural provisions the Com-

plaint invokes.

whether it provides sufficient money to complete reclamation. OSM responded to this criticism when it provisionally approved the amendment, saying it relied on an internal agency directive, which specifies:

when a proposed amendment concerns an ABS that no longer meets the criteria in 30 CFR 800.11(e), we may approve the amendment even if it does not fully remedy all deficiencies, provided we find that the amendment does not adversely affect the solvency of the ABS.

66 Fed.Reg. at 67448 (citing App. 12, OSM Directive STP-1). The Court first considers whether OSM properly relied on this directive.

■■■ Ordinarily, the APA provides for limited judicial review of agency action. *See* 5 U.S.C. §§ 702, 706. Courts may review only final agency actions and may overturn agency action only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(a). In making the factual inquiry whether an agency decision was arbitrary or capricious, the reviewing court "must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). While the inquiry must be "searching and careful," the "ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* As frequently observed, an agency's interpretation of a statute it is charged with administering is subject to *Chevron* deference: "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467

U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In its provisional or bifurcated approval process, OSM relied on an internal directive not subject to notice and comment or public review, and applicable only to the agency's own actions. In *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), the Court considered such internal agency rules and interpretive choices as distinguished from rulemaking. The former are not accorded *Chevron* deference, but considered under the *Skidmore* standard, which Justice Jackson summarized thus: "The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*, 121 S.Ct. at 2172 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

Plaintiff complains the OSM's partial ABS-approval rule could lead to infinitely small and unending improvements, never reaching a statutorily satisfactory end. While that potential exists, OSM has promised to make its final and determinative decision by May 28, 2002, so the spectre Plaintiff raises is unreal. In fact, the May 28 date hastens the timetable OSM set in its Part 733 letter of June 29, 2001, which this Court found reasonable. *Conservancy II*, 161 F.Supp.2d at 685. The letter required *final legislation submitted* to OSM by 45 days after the 2002 State legislative session or April 23, 2002. The 7–Up Plan for ABS reformation is now on a fast track for *final OSM approval or disapproval* by May 28, 2002. Additionally, the Court and the public have OSM's promise, if the amendment is not approved, Part 733 proceedings will begin.

In this case, approving the amendment under OSM internal directive "even if it does not fully remedy all deficiencies," will not unduly delay the ultimate approval process.

OSM's rationale for bifurcating the approval process is two-fold: (1) immediately to obtain more funds while (2) providing additional time to consider the complex issue whether sufficient money will be available to complete reclamation, including the treatment of polluted water, at all existing and future bond forfeiture sites. Having reviewed the Conservancy's substantial submissions on the second issue, the Court agrees with all parties: the issue is dauntingly complex. Resolution will require expertise in mine reclamation and water treatment, historical analysis of such costs and their future projections, while considering increased mine permits, increased acreage and increasing water treatment and reclamation costs while also matching costs to potential tax revenues (and that is a greatly simplified account). The Conservancy has done much heavy lifting thus far, producing figures and proposing answers to the question, what will constitute sufficient SRF funds.

OSM's action bifurcating the approval process is well-reasoned and sensible, balancing the urgent and obvious need to increase tax revenue flowing to the SRF with the difficulty of analyzing the ultimate statutory issue: whether the requirements of 30 U.S.C. § 1259 are met. OSM's decision to bifurcate its response to public comments follows directly and sensibly from the first decision. All commenters, including the Conservancy, may rest on their initial submissions or resubmit, expand, and refine their comments. All public comments on SRF sufficiency will be addressed when the SRF-sufficiency decision is made.

It is obvious this citizen suit has jump-started long overdue state and federal agency action. Part 733 proceedings were begun only after the Conservancy moved the Court to order them begun. The State quickly responded with a plan and a special legislative session. This citizen suit already has prompted important results: both a date certain for OSM's final decision on the 7–Up Plan and the agency's promise, in the event of its disapproval, to take Part 733 action immediately. With these processes on the fast track toward a positive outcome, thanks to the Plaintiff's well-placed pressure and persistence and the agencies' response to that pressure, it would be unfortunate to interfere and throw a monkey wrench into the fast track's works.

The Court concludes OSM's reliance on its internal directive, its partial and provisional approval of the State's 7–Up Plan amendment, and its temporary postponement of final approval, but within a timeframe consistent with the initial Part 733 timetable, are neither arbitrary, capricious, nor inconsistent with SMCRA, its implementing regulations and the APA. Accordingly, summary judgment on *Count* 8 is **DENIED** and Plaintiff's request for injunctive relief is moot.

### D. Counts 2 and 3

 Twenty-five amendments to the West Virginia surface mining regulatory program are at issue in *Counts* 2 and 3: sixteen amendments required by OSM that the Conservancy alleges WVDEP failed to submit, and nine amendments submitted to OSM on which it has not acted. Plaintiff seeks partial summary judgment on *Count* 2 that WVDEP failed to submit the required amendments, which triggered OSM's nondiscretionary duty to begin Part 733 proceedings, and on *Count* 3 that OSM has unreasonably delayed taking the Part 733 actions, and a permanent injunction with a strict timetable compelling OSM to

proceed with its mandatory Part 733 duties.

▓▓ Once again, under pressure from this litigation, both WVDEP and OSM have acted. Since the citizen's action commenced in November 2000, WVDEP has submitted either proposed amendments or an explanation why it believes no amendment is necessary for twenty-four of the twenty-five amendments required.[8] Eight days after the Conservancy's summary judgment motion was filed, OSM wrote DEP officials to advise them of the outstanding program amendments that are the subject of this motion. (*See* Defs.' Mem. in Opp'n, Ex. 1.) Following a day-long meeting between state and federal officials, follow-up communication occurs on a daily basis, to resolve outstanding issues.

OSM also promised through the sworn declaration of then-acting Director Glenda Owens to approve or disapprove the State's proposed resolutions on the twenty-four responses submitted[9] by May 1, 2002, and to initiate proceedings under Part 733 on any of the twenty-five required amendments that have not been satisfied by the State no later than May 15, 2002. In any case, OSM argues, the regulatory timeline for issuing decisions on amendments already submitted is directory, not mandatory.

8. The oldest required amendment was due November 26, 1985. 30 C.F.R. § 948.16(a). The remainder were due in 1991, 1992, 1996, 1997, or 1999 with the last two due in the year 2000; that is, most were due in the last century. *See id.* at (dd), (ee), (*oo*), (tt), (nnn), (*ooo*), (sss), (vvv), (zzz), (aaaa), (bbbb), (gggg), (hhhh), (iiii), (*oooo*).

As discussed above and in *Conservancy II,* the State has sixty days to respond to OSM's notice an amendment to the state program is required and OSM has thirty days to respond to the State's failure. *See supra* II.A.1. Absent a response, OSM *shall* begin Part 733 proceedings. *See* 30 C.F.R. § 732.17(f)(2). That was never done.

As previously discussed at length, OSM's failure to insist the State bring its surface mining program into compliance with SMCRA has caused damaging environmental and political outcomes. *See Conservancy II,* 161 F.Supp.2d at 680. When the State persists in ignoring federal authority without legal consequence, the climate of lawlessness that results is not repaired once agency action finally is taken. Only a persistent pattern of timely and forceful federal agency action will overcome the perception the enforcer is toothless.

As the Court previously found, agency actions moving toward bringing the state surface mining program into compliance with SMCRA do not moot the Conservancy's complaint. *Conservancy II,* 161 F.Supp.2d at 680. However, the allegation that OSM has a duty

to commence Part 733 proceedings is mooted by receipt of WVDEP's proposed amendments and explanations. *Id.* Accordingly, Plaintiff's motion for partial summary judgment on *Count* 2 is **DENIED** without prejudice, because subsequent events or omissions could reactivate OSM's duty to commence proceedings.

9. The State has made no response to the OSM requirement codified at 948.16(*oooo*), which requires removal of the state regulation at CSR 38–2–23. CSR 38–2–23 would allow persons to mine coal without a full surface mining permit where extraction is incidental to private development projects. SMCRA allows no such exception. OSM disapproved the regulation, and thus the state regulation is not law. The Federal Defendants argue, in defense of the State agency, that this failure has no legal consequences because the regulation is not law and leaves no "hole" in the state program. (Defs.' Mem. in Opp'n at 3, n. 4.)

Currently, the state regulations have not a hole, but a "hump," a regulation that is not law. The Supreme Court of Appeals of West Virginia made a legal determination the regulation was not in effect absent OSM approval. *See DK Excavating, Inc. v. Miano,* 209 W.Va. 406, 549 S.E.2d 280 (2001). The state regulations are confused, inaccurate, and misleading. As such, these are legal consequences, even if WVDEP never issues such an extralegal permit.

Plaintiff first argues WVDEP's explanations why no amendment is needed do not suffice: nothing in SMCRA or OSM's regulations allows a State to submit explanations rather than a proposed amendment or description of an amendment. *See* 30 C.F.R. § 732.17(f)(1). OSM counters Plaintiff's position would force OSM arbitrarily to reject potentially valid reasons for not submitting program amendments. States, OSM continues, have the best grasp of their own programs. Also, the Conservancy may comment on the adequacy of the State's explanations.

As discussed above, the Court applies the *Skidmore* standard to the agency's decision to accept explanations in lieu of amendments. The agency's rationale for this decision is persuasive because it applies common sense to a situation not accounted for by the regulations, the situation where the federal agency may be mistaken and no amendment is needed. This is a reasonable approach, which will lead quickly to the result Plaintiff desires—a decision whether state law may stand as it is or must be amended. The agency's approval or refusal to approve the explanation is as effective as approval or refusal to approve an amendment.

The next question is whether OSM has unreasonably delayed action on the State's proposed amendments. In evaluating unreasonable delay claims, courts consider four factors: 1) the length of time elapsed since the duty was manifest, 2) reasonableness of the delay in context of the statute, 3) consequences of the agency's delay, and 4) any pleas of administrative error, difficulty, convenience or prioritization. *See Conservancy II*, 161

F.Supp.2d at 683 (citing *In re International Chemical Workers Union*, 958 F.2d 1144, 1149 (D.C.Cir.1992)).

SMCRA requires: "The Secretary shall approve or disapprove a State program, in whole or in part, within six full calendar months after the date such State program was submitted to him." 30 U.S.C. § 1253(b). Tracking the statute, Section 732.17(h), which provides procedures, time schedules and criteria for approval and disapproval of State program amendments, concludes: "*However*, final action on all amendment requests must be completed within six months after receipt of the proposed amendments from the State." 30 C.F.R. § 732.17(h) (emphasis in original). The six-month mandatory deadlines for OSM approval or disapproval of twenty-four amendments submitted by WVDEP passed on July 3, 2001 for the first batch[10] and November 24, 2001 for the second.[11]

The Federal Defendants propose that deadlines for processing program amendments are directory, that is they provide only guidance, and are not judicially enforceable. They cite the general rule that a statutory or regulatory time period for agency action is not mandatory unless it also specifies a consequence for the agency's failure to meet the deadline. As Plaintiff correctly responds, the cases Defendants cite for this proposition actually hold that an agency's failure to take an action within the time period prescribed by a regulation does not deprive the agency of jurisdiction to take that action. (Pl.'s Combined Reply Mem. at 7 (citing e.g., *United States v. Bolton*, 781 F.2d 528, 533 (6th Cir.1985); *Ralpho v. Bell*, 569 F.2d

---

**10.** OSM announced receipt on January 3, 2001 of amendments codified at 948.16(a), (dd), (ee), (*oo*), (tt), (mmm), (nnn), (*ooo*), (sss), (vvv), (zzz), (aaaa), (bbbb), (iiii), (kkkk), (*llll*), (mmmm), and (*oooo*). *See* 66 Fed.Reg. 335, 335 (Jan. 3, 2001).

**11.** On May 24, 2001 OSM announced receipt of amendments codified at 948.16(zzz), a duplicate, (nnnn), (ffff), (qqq) (jjjj), (xx), and (pppp). *See* 66 Fed.Reg. 28682, 28682–84 (May 24, 2001).

607, 626–28 (D.C.Cir.1977); *Usery v. Whitin Machine Works, Inc.,* 554 F.2d 498, 501–02 (1st Cir.1977))); *see also Holland v. Pardee Coal Co.,* 269 F.3d 424, 430–37 (4th Cir.2001); *United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1342–47 (4th Cir.1994).

In *Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), the Supreme Court acknowledged Circuit precedent recognizing the mandatory/directory distinction, but refused expressly to adopt it because "We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially where important public rights are at stake." Instead, the Court suggests there are "less drastic remedies available for failure to meet a statutory deadline" and cites the APA provisions for judicial review of agency action. *Id.* at n. 7, 106 S.Ct. 1834. Where a statute commands an agency "shall" act, the Court says such action clearly is not committed to an agency's discretion so as to evade review under the APA. *Id.* And where the agency failed to act by the statutory deadline, "the court would have the authority to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)). Statutory and regulatory deadlines for agency action are, therefore, enforceable through the APA, just the route chosen by Plaintiff. While subsequent agency actions are not void, the statutory and regulatory invocation of a deadline in conjunction with mandatory language, "must" and "shall", certainly implies time is of the essence.

Regarding its failure to meet these deadlines, OSM pleads there are other critical priorities for agency resources, in-

cluding the mountaintop removal Environmental Impact Statement ("EIS"), *see* Settlement Agreement, *Bragg v. Robertson,* No. 2:98–0666 (S.D.W.Va. Dec. 23, 1998),[12] and agency efforts to remedy the deficiencies in the West Virginia ABS program. Considering this plea in conjunction with the agency's promise to make all amendment determinations by May 1, 2002 and begin Part 733 proceedings, if necessary, by May 15, 2002, the Court declines to find OSM has unreasonably delayed these approvals or disapprovals. Accordingly, Plaintiff's motion for partial summary judgment on *Count* 3 is **DENIED** and its motion for a permanent injunction is **DENIED** as moot.

### III. CONCLUSION

For more than a decade OSM was derelict and dilatory in the extreme, but recently, and clearly in response to this litigation, stepped-up agency activity promises a state surface mine regulatory program that conforms to SMCRA requirements. Even WVCA, which intervened as a defendant, nevertheless urges the necessity of timely action by the Federal Defendants and requests the Court "order the federal defendants to complete final agency action on all outstanding program amendments within a reasonable time." (Def.–Intervenor's Mot. to Dismiss at 17.)

The Federal Defendants have committed themselves by sworn statements of their officials to complete the actions of which Plaintiff complains. OSM promises to approve or disapprove the State's proposed amendments and explanations by **May 1, 2002,** to initiate 733 proceedings on any of the twenty-five required program amend-

---

12. The EIS was to be completed no later than twenty-four months after the effective date of the settlement agreement. The agreement was proffered to the Court December 23, 1998, and was accepted June 17, 1999. *See Bragg v. Robertson,* 54 F.Supp.2d 653, 658 (S.D.W.Va.1999).

ments by **May 15, 2002,** to determine whether the 7–Up Plan fully satisfies the required amendment at 30 C.F.R. § 948.16(*lll*) by **May 28, 2002,** and otherwise immediately take Part 733 action on the West Virginia ABS. Although the Court has not granted injunctive relief requested by the Conservancy, it will hold the Federal Defendants to their promises and enforce these dates.

Plaintiff's motion for leave to file an amended and supplemental Complaint is **GRANTED** and it is **ORDERED** filed. The remaining motions are **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and publish it on the Court's website at htt://www.wvsd.usc-ourts.gov.